James T. HANNON, et al., Plaintiffs,

v.

**UNITED STATES, Defendant.**

No. 91–1334C.

United States Court of Federal Claims.

Oct. 6, 2000.

Iriving Kator, Kator, Scott & Parks, Washington D.C., attorney of record for the plaintiffs.

Scott D. Austin, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were James M. Kinsella, Deputy Director, David M. Cohen, Director, David W. Ogden, Acting Assistant Attorney General, attorneys of record for the defendant. James E. Hicks, Office of Chief Counsel, Drug Enforcement Administration, of counsel.

## OPINION

HORN, Judge.

The above captioned cases come before the court on the defendant's renewed motion for partial dismissal for lack of jurisdiction and/or failure to state a claim upon which

relief can be granted pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims (RCFC). In the motion, the defendant's primary arguments are that the claims of the plaintiffs in these cases fall within the exclusive jurisdiction of the Merit Systems Protection Board (MSPB),[1] and that the plaintiffs have failed to exhaust available administrative remedies. The defendant's renewed motion raises four additional arguments, which are addressed later in this opinion.

### FACTS

The plaintiffs in these cases are 260 Diversion Investigators (DIs), employed by the Drug Enforcement Administration (DEA), which is an agency within the Department of Justice (DOJ). The plaintiffs are classified as GS/GM–1810 and range from grade five through grade sixteen on the federal pay scale. The plaintiffs allege that the decision to deny them overtime compensation and benefits in accordance with the Federal Law Enforcement Pay Reform Act of 1990, Pub.L. No. 101–509, §§ 401–412, 104 Stat. 1389, 1465–69 (FLEPRA),[2] while providing such compensation to special agents, GS–1811 Criminal Investigators, also employed by the DEA, is arbitrary, capricious, and not in accordance with the law. The plaintiffs seek relief in this court pursuant to 28 U.S.C. § 1491 (1994 & Supp. II 1998), and the Back Pay Act, 5 U.S.C. § 5596 (1994), because of the defendant's refusal to pay them premium and overtime pay, as allegedly required pursuant to FLEPRA, and administratively uncontrollable overtime (AUO), as provided by 5 U.S.C. § 5545(c) (1994). The plaintiffs argue that under the applicable statutes and DOJ orders, they are "law enforcement officers" (LEOs) entitled to receive the same compensation as other DEA LEOs, including special agents, based on the actual work performed by them during the course of their employment.

The parties have jointly stipulated the central issues in these cases to be: "[w]hether the duties performed by the plaintiffs during the periods covered by this lawsuit meet the definition of 'law enforcement officer' within the meaning of 5 U.S.C. § 5541(3)(A), 5 U.S.C. § 8331(20) and 5 U.S.C. § 8401(17) so as to qualify them for the benefits provided under the applicable provisions of the Federal Law Enforcement Pay Reform Act (PL101–509) ('FLEPRA') retroactive to the effective date of FLEPRA," and "[w]hether plaintiffs are entitled to pay under 5 U.S.C. § 5545 for administratively uncontrollable overtime service for periods prior to the effective date of 'FLEPRA.' "

Three individual cases have been selected by the parties to serve as the test plaintiffs for this matter: *John W. Partridge v. United States*, Case No. 94–819C, *John D. Crowley v. United States*, Case No. 94–711C, and *John Buckley v. United States*, Case No. 92–469C. Buckley is one of the original nine plaintiffs who filed a complaint in this court. The test cases were selected as they cover three categories of plaintiffs: (1) Diversion Investigators, (2) Diversion Group Supervisors, and (3) those from the above two categories who have transferred to administrative positions. The test cases also encompass each of the four types of claims in this action: (1) qualification for a special rate of pay if he or she was an employee at grades GS–3 through GS–10 pursuant to FLEPRA section 403 (5 U.S.C. § 5305 note); (2) qualification for a special rate of pay if he or she was posted for duty in one of eight specified metropolitan areas pursuant to FLEPRA section 404 (5 U.S.C. § 5305 note); (3) eligibility for premium pay for AUO derived from working scheduled overtime work compensated at the greater of 150 percent of the GS–10 hourly pay rate,

---

**1.** The court notes that plaintiffs Hannon and Townsend have pending appeals from MSPB decisions on retirement credit claims in the United States Court of Appeals for the Federal Circuit. The Circuit court has the *Hannon* case (Appeal No. 99–3354) under advisement after oral argument, and briefs and an appendix have been filed in the *Townsend* case (Appeal No. 00–3014).

**2.** Sections 401–407 and 412 of FLEPRA are found at 5 U.S.C. § 5305 note (1994). Section 408 is codified at 5 U.S.C. §§ 4521–4523, 6401 (1994); Section 409 at 5 U.S.C. § 8335 (1994) and 5 U.S.C. § 8425 (1994); Section 410 at 5 U.S.C. §§ 5542, 5547 (1994) (repealed in part by Pub.L. No. 102–378, § 2(43) (Oct. 2, 1992)); and Section 411 at 5 U.S.C. § 5541 (1994).

or their own hourly pay rates, pursuant to FLEPRA section 410 (5 U.S.C. §§ 5542, 5547); and (4) eligibility for relocation bonuses for jobs that are difficult to fill (within the meaning of 5 U.S.C. § 5753 (1994)), up to a maximum of $15,000.00, for any LEO earning less than $60,000.00 annually at the time of relocation, pursuant to FLEPRA section 407 (5 U.S.C. § 5305 note). In addition, the test cases represent plaintiffs from DEA offices in three different geographical regions (Los Angeles, California, Boston, Massachusetts, and Arlington, Virginia). The parties concur that the test cases represent the entire universe of plaintiffs and their claims.

At a February 24, 1999 status conference, the court ordered the parties to prepare for trial of the three test cases. The court also allowed the defendant to resubmit its earlier motion to dismiss. That motion had been stayed pending the issuance of the two final MSPB decisions on whether two of the nine plaintiffs who had appealed the agency's final decision would be eligible for LEO retirement credit under the Civil Service Retirement System (CSRS), pursuant to 5 U.S.C. §§ 8331(20), 8336(c) (1994). As the MSPB decisions were still pending at the time of the status conference and the parties were preparing for trial on the three test cases, the court allowed the defendant to renew its motion to dismiss.

DEA's predecessor, the Bureau of Narcotics and Dangerous Drugs (BNDD) established the Diversion Control program in 1971, following passage of the Controlled Substance Act of 1970 (CSA). See 21 U.S.C. §§ 801 et seq. (1994). One of the purposes of the CSA was to combat the diversion of controlled substances to addicts and drug dealers by doctors, pharmacists, manufacturers, and distributors. It established requirements for the use, storage, and distribution of controlled substances, and it made the diversion of drugs violations of the law punishable under the criminal statutes of the United States. Duties of DIs include assuring compliance with the requirements created by the CSA and investigating violations of criminal laws with respect to diversion of drugs into illegal channels.

Plaintiff John Buckley began working with BNDD in April 1972. Mr. Buckley worked in New York City initially from 1972 to 1983. He was an investigator from April 1972 until October 1979, at which time he was promoted into the position of a group supervisor. Mr. Buckley was a group supervisor until March 1983 when he was transferred to DEA headquarters in Arlington, Virginia, where he worked as a staff coordinator for the Office of Diversion. He returned to New York to work as a supervisor of DIs from August 1985 until October 1988 when he transferred back to the headquarters as the deputy chief of diversion operations. Mr. Buckley remained in that position until mid–1989 when diversion operations split into drugs and chemicals. Mr. Buckley became the deputy chief in chemical operations and remained in that position until June 30, 1991, when he was transferred to the Office of Inspections. According to the papers filed with the court, Mr. Buckley continues to work at the Office of Inspections as an inspector. Also, according to the parties, Mr. Buckley's retirement benefits arise under the CSRS, pursuant to 5 U.S.C. §§ 8331(20), 8336(c). To date, the Office of Personnel Management (OPM) has credited Mr. Buckley with LEO retirement coverage under 5 U.S.C. §§ 8331(20), 8336(c) for the time period from January 1, 1975 until August 23, 1989.

Plaintiff John Crowley started working with BNDD in 1973 as a DI, assigned to the Boston, Massachusetts office. Mr. Crowley served as a DI until June 16, 1986 when he was promoted to supervisory investigator in the same office. In February 1991, Mr. Crowley was transferred to DEA headquarters in Arlington, Virginia to work in the position of staff coordinator for the Office of Diversion Control. He remained in this position until October 1994. At that time, he was transferred back to Boston and became a supervisory investigator once again. According to the papers filed with the court, Mr. Crowley continues to work as a supervisory investigator in Boston at this time. Also, according to the parties, Mr. Crowley's retirement benefits arise under the CSRS, pursuant to 5 U.S.C. §§ 8331(20), 8336(c). To date, the OPM has credited Mr. Crowley

with LEO retirement coverage under 5 U.S.C. §§ 8331(20), 8336(c) for the time period from June 15, 1974 through September 30, 1991.

Plaintiff John Partridge began working as a DI in the Los Angeles office in 1990. According to the papers filed with the court, he continues to work in that position at this time. Mr. Partridge's retirement benefits arise under the Federal Employees Retirement System (FERS), pursuant to 5 U.S.C. §§ 8401(17), 8412(d) (1994). Mr. Partridge has never filed an application for LEO retirement credit. Accordingly, there is no agency decision concerning his coverage as an LEO under FERS.

DIs have not been considered by the DEA as meeting the definition of "law enforcement officer" for premium pay purposes. DIs have not been paid under special pay provisions of FLEPRA and have not received pay for AUO pursuant to 5 U.S.C. § 5545. DEA has adopted the position that once an employee is determined to be entitled to LEO retirement credit for a period of time subject to FLEPRA, that employee will be paid premium pay pursuant to FLEPRA as follows. DEA will pay the employee premium pay pursuant to FLEPRA section 403 (5 U.S.C. § 5305 note) for any period of time, subsequent to the effective date of FLEPRA section 403 (5 U.S.C. § 5305 note), for which it is determined (1) that the employee is entitled to LEO retirement credit, and (2) that the employee satisfies the requirements of FLEPRA section 403 (5 U.S.C. § 5305 note). DEA will pay the employee premium pay pursuant to FLEPRA section 404 (5 U.S.C. § 5305 note) for any period of time, subsequent to the effective date of FLEPRA section 404 (5 U.S.C. § 5305 note), for which it is determined (1) that the employee is entitled to LEO retirement credit, and (2) that the employee satisfies the requirements of FLEPRA section 404 (5 U.S.C. § 5305 note) and 5 C.F.R. §§ 531.301–531.306 (2000 [3]). DEA will pay the employee premium pay pursuant to FLEPRA section 410 (5 U.S.C. §§ 5542, 5547) for any period of time, subse-

quent to the effective date of FLEPRA section 410 (5 U.S.C. §§ 5542, 5547), for which it is determined (1) that the employee is entitled to LEO retirement credit, and (2) that the employee satisfies the requirements of FLEPRA section 410 (5 U.S.C. §§ 5542, 5547). Each DI who meets the requirements for premium pay pursuant to FLEPRA, discussed above, will be paid, retroactively, the amount to which he or she is entitled.

Of the 260 DI's with cases pending in this court, 145 have applied to the DEA and/or the Justice Management Division (JMD), a division of the DOJ, for LEO retirement credit under the CSRS, as provided by 5 U.S.C. §§ 8331(20), 8336(c), and under FERS, as provided by 5 U.S.C. §§ 8401(17), 8412(d). In 1995, the JMD issued final orders on nine of the 145 applications. All nine applications were denied, and each affected DI filed an appeal to the MSPB. The nine cases were consolidated on appeal, and two of the cases, James T. Hannon and Ronald J. Townsend, proceeded to hearing on December 11, 1995. The remaining seven appeals were stayed at the MSPB pending final resolution of the two designated cases. On April 30, 1997, MSPB Administrative Judge Jenkins issued a decision reversing the JMD's denial of LEO retirement credit, concluding that both plaintiffs were entitled to LEO retirement credit under their respective retirement systems, CSRS and FERS. A Petition for Review was filed before the MSPB by the DOJ on June 3, 1997. The MSPB issued a final decision in the case of James T. Hannon on June 11, 1999, reversing the Administrative Judge's decision. The MSPB decision found that Mr. Hannon is not entitled to LEO retirement credit under the CSRS, pursuant to 5 U.S.C. §§ 8331(20), 8336(c), consistent with the JMD's denial of LEO retirement credit. *Hannon v. Department of Justice*, 82 M.S.P.R. 315 (1999). The MSPB issued a final decision in the case of Ronald J. Townsend on August 31, 1999, also reversing the Administrative Judge's decision, similarly holding that he is not entitled to LEO retirement credit under the FERS, pursuant to 5 U.S.C. §§ 8401(17), 8412(d).

**3.** Subpart C—Special Pay Adjustment for Law Enforcement Officers, was first published at 57 Fed.Reg. 2432 (Jan. 22, 1992) (codified as amended at 5 C.F.R. §§ 531.301–531.305 (1993)).

*Townsend v. Department of Justice*, 83 M.S.P.R. 427 (1999). James T. Hannon filed an appeal with the United States Court of Appeals for the Federal Circuit on July 20, 1999. *See Hannon v. Department of Justice*, 215 F.3d 1350, 1999 WL 681498 (Fed.Cir. 1999) (table) (review reinstated). Ronald J. Townsend filed an appeal with the United States Court of Appeals for the Federal Circuit on October 13, 1999. The two appeals are pending.

In addition to the nine final orders issued by the JMD in 1995, the defendant claims that, since the MSPB's final decision in the case of Ronald J. Townsend, the JMD has issued final orders on 65 additional applications, denying LEO retirement credit in all 65 cases, for a total of 74 cases as of August 20, 2000. The plaintiffs have confirmed that 52 decisions have been issued by the JMD, but state that the remaining 22 decisions JMD claims it has issued have not been confirmed.

### DISCUSSION

The defendant has filed a partial motion to dismiss the complaint for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(1) and 12(b)(4). Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied* (1993); *United States v. Newport News Shipbuilding & Dry Dock Co.*, 933 F.2d 996, 998 n. 1 (Fed.Cir.1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *See McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed.Cl. 689, 695 (1995), *appeal dismissed*, 86 F.3d 1178, 1996 WL 285759 (Fed.Cir. 1996); *Catellus Dev. Corp. v. United States*, 31 Fed.Cl. 399, 404 (1994); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir.1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States*,

32 Fed.Cl. at 695. When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion "only if 'it appears beyond doubt that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'" *Son Broadcasting, Inc. v. United States*, 42 Fed.Cl. 532, 537 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *W.R. Cooper General Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988) ("If the[ ] facts [alleged in the complaint] reveal any possible basis on which the non-movant might prevail, the motion must be denied.").

Pursuant to RCFC 8(a)(1) and the Federal Rules of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends ...." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir.1997), *reh'g denied* (1997). "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir.1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. 99; *accord Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000); *see also Alaska v. United States*, 32 Fed.Cl. at 695; *Highland Falls–Fort Montgomery Cent. School Dist. v. United States*, 48 F.3d 1166, 1167 (Fed.Cir. 1995) (citing *Gould, Inc. v. United States*, 935

F.2d 1271, 1274 (Fed.Cir.1991)), *cert. denied,* 516 U.S. 820, 116 S.Ct. 80, 133 L.Ed.2d 38 (1995); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d at 1416. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. at 404–05. When considering a motion to dismiss, the court may examine relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *see also Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied sub nom. Cedars–Sinai Med. Ctr. v. O'Leary,* 512 U.S. 1235, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

■ In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491 (1994 & Supp. II 1998). The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, or statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), *reh'g denied,* 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir. 1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed.Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "'it does not create any substantive right enforceable against the United States for money damages.'" *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948), *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45, 1990 WL 60708 (Fed.Cir.1990) (table) (citations omitted); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting

*Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009)); *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed. Cir.1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed. Cir.1998)), *reh'g denied* (1999); *John Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g denied* (1997); *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999) ("Under the Tucker Act, when a cause of action is not based upon breach of contract against the government, the Court of Federal Claims has jurisdiction only over those constitutional provisions, statutes, or regulations that by their terms entitle a plaintiff to money.").

The defendant presents several arguments in support of its partial motion to dismiss the plaintiffs' complaints. First, the defendant argues that the MSPB has exclusive jurisdiction of the plaintiffs' FLEPRA claims for LEO credit. Second, the defendant alleges that the plaintiffs failed to exhaust administrative remedies via the DOJ and the MSPB in their search to be classified as LEOs. Third, the defendant states that only one of the test case plaintiffs, John Partridge, has a FLEPRA section 403 (5 U.S.C. § 5305 note) claim upon which relief can be granted; thus, the other FLEPRA section 403 (5 U.S.C. § 5305 note) claims should be dismissed. Fourth, the defendant argues that FELPRA section 407 (5 U.S.C. § 5305 note) relocation pay is discretionary and, therefore, not a money-mandating statutory provision. Fifth, the defendant asserts that the court lacks jurisdiction to entertain back pay claims which accrued before August 2, 1985, since they are foreclosed by the statute of limitations. Sixth, the defendant argues that the court lacks jurisdiction to entertain plaintiffs' requests for injunctive and/or declaratory relief.

## I. FLEPRA Jurisdiction in the United States Court of Federal Claims

The defendant argues that this court lacks jurisdiction to entertain the plaintiffs' claims and that the MSPB has jurisdiction because FLEPRA defines the term "law enforcement officer" as any law enforcement officer within the meaning of the statutory section on premium pay, 5 U.S.C. § 5541(3)(A). Section 5541(3)(A) states that " 'law enforcement officer' means an employee who—(A) is a law enforcement officer within the meaning of section 8331(20) or 8401(17)," thereby incorporating the definition of a "law enforcement officer" contained in the retirement statutes. Title 5 U.S.C. § 8331(20) states:

> "law enforcement officer" means an employee, the duties of whose position are primarily the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, including an employee engaged in this activity who is transferred to a supervisory or administrative position.

5 U.S.C. § 8331(20). Title 5 U.S.C. § 8401(17), although formatted differently, similarly states:

> the term "law enforcement officer" means—
>
> (A) an employee, the duties of whose position—
>
> (i) are primarily—
>
> (I) the investigation, apprehension, or detention of individuals suspected or convicted of offenses against the criminal laws of the United States, or
>
> (II) the protection of officials of the United States against threats to personal safety; and
>
> (ii) are sufficiently rigorous that employment opportunities should be limited to young and physically vigorous individuals, as determined by the Director considering the recommendations of the employing agency; . . . .

5 U.S.C. § 8401(17). The defendant suggests that this statutory reliance in FLEPRA upon the definition contained in the retirement statutes requires the plaintiffs to first ascertain "whether they qualify as law enforcement officers for retirement purposes" and that "[t]his issue falls within the exclusive jurisdiction of the MSPB."

■ The MSPB was created by the Civil Service Retirement Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of title 5 U.S.C.) (CSRA), as part of Congress' comprehensive overhaul of the civil service system. *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 773–74, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985). The defendant is correct that whether an employee qualifies for LEO credit for retirement purposes is determined by the employee's agency, with a right of appeal to the MSPB, 5 U.S.C. §§ 1204(a)(1), 7701, 8347(d)(1), 8461(e)(1) (1994), and ultimately to the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1) (1994). The United States Court of Federal Claims, therefore, is not the appropriate authority to determine retirement issues, as that arena of federal employee litigation is within the exclusive jurisdiction of the MSPB and the United States Court of Appeals for the Federal Circuit. *See Lindahl v. Office of Personnel Management*, 470 U.S. at 773–75, 791–99, 105 S.Ct. 1620.

The issue currently before the court, however, is not about the plaintiffs' retirement status, but rather about their pay status. The plaintiffs assert that these are not "retirement" cases. According to the plaintiffs these are "pay" cases not only because a significant number of the plaintiffs have never applied for LEO retirement credit, and thus can have no claim at MSPB, but, also because, like those who have applied for retirement credit, all the plaintiffs are entitled to the premium pay afforded by FLEPRA to LEOs. Otherwise stated, the plaintiffs allege that jurisdiction in this court is premised on a statutory right to receive money in cases in which the plaintiffs have been deprived of pay by the federal government under FLEPRA. The explicit incorporation by Congress of the retirement statutes' definition of a "law enforcement officer" into FLEPRA is not a sufficient basis for reading into FLEPRA a requirement that the retirement statutes' review mechanisms through the MSPB must be utilized when reviewing pay issues. Independent of the legislation establishing retirement entitlement, Congress chose a statutory definition of "law enforcement officer" in FLEPRA for pay purposes, without necessarily incorporating the same review provisions. Incorporation of administrative and judicial review provisions must be explicit in a statute, particularly to a forum of limited jurisdiction such as the MSPB.

FLEPRA does not mention an administrative prerequisite to filing a suit for civilian back pay in the United States Court of Federal Claims. *See* 5 U.S.C. § 5305 note. In contrast, the federal retirement statutes referenced in these cases include explicit provisions articulating the administrative process to be used when filing and reviewing retirement claims. *See* 5 U.S.C. § 8347(d)(1) (containing provisions for the CSRS which state that "an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board."); 5 U.S.C. § 8461(e)(1) (containing provisions for the FERS which state that "an administrative action or order affecting the rights or interests of an individual or of the United States under the provisions of this chapter administered by the Office [of Personnel Management] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board.").

■ The MSPB's jurisdiction is limited. *See, e.g., Walker v. Department of the Navy*, 106 F.3d 1582, 1584 (Fed.Cir.1997) ("The Board has only that jurisdiction conferred on it by Congress, and the burden of establishing the Board's jurisdiction rests with the petitioner.") (citing *Perez v. MSPB*, 85 F.3d 591, 593 (Fed.Cir.1996); *Manning v. MSPB*, 742 F.2d 1424, 1426 (Fed.Cir.1984)); *see also Middleton v. Department of Defense*, 185 F.3d 1374, 1379 (Fed.Cir.1999) ("The Board's jurisdiction is limited to adverse personnel actions expressly made appealable to it by law, rule, or regulation."). The MSPB has jurisdiction to review agency decisions arising under retirement statutes and cases involving adverse personnel actions under the CSRA. *See* 5 U.S.C. § 7513(d) (1994); 5 C.F.R. § 1201.3(a) (1999). The MSPB, however, does not have jurisdiction to hear cases involving calculation of pay without an underlying adverse action as defined by the CSRA. In the above captioned cases, the plaintiffs

have not undergone an adverse personnel action, and they do not seek a claim under the retirement statutes. Instead, the plaintiffs seek overtime compensation and benefits in accordance with FLEPRA.

■ The defendant relies on the United States Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439, 454, 108 S.Ct. 668, 98 L.Ed.2d 830, *reh'g denied*, 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988), to argue that this court lacks jurisdiction to entertain the plaintiffs' FLEPRA claims. In *United States v. Fausto* the Supreme Court concluded that, after the enactment of the CSRA, "the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination." *United States v. Fausto*, 484 U.S. at 454, 108 S.Ct. 668. The Supreme Court determined that the entities possessing the authority to review personnel determinations are the agency itself, the MSPB, and the United States Court of Appeals for the Federal Circuit. *See id.; see also* 5 U.S.C. §§ 7513(d), 7703(b)(1) (granting MSPB responsibility for adjudicating employees' appeals from adverse personnel actions, with appellate review available at the United States Court of Appeals for the Federal Circuit). The court concluded that the respondent could not seek review in the United States Claims Court, nor the United States Court of Federal Claims, for a "personnel action of the sort at issue here" (30 day suspension for unauthorized use of a government vehicle). *United States v. Fausto*, 484 U.S. at 455, 108 S.Ct. 668.

Subsequently, the United States Court of Appeals for the Federal Circuit determined that *United States v. Fausto* did not divest the United States Court of Federal Claims of jurisdiction in all instances. *See Bosco v. United States*, 931 F.2d 879 (Fed.Cir.1991), *aff'd*, 976 F.2d 710, 714 (Fed.Cir.1992). "The Supreme Court [in *United States v. Fausto* ] did not rule that the CSRA provided the only means of judicial review of any actions affecting federal employees, but rather that it was the only means of review as to the types of adverse personnel action specifically covered by the CSRA...." *Bosco v. United States*,

931 F.2d at 883; *see Romero v. United States*, 38 F.3d 1204, 1211 (Fed.Cir.1994).

The United States Court of Federal Claims, therefore, retains jurisdiction "to hear claims based on a statutory right to receive money where plaintiffs had allegedly been deprived of that money by federal government action ... except where the underlying personnel action is covered by the CSRA." *Worthington v. United States*, 41 Fed.Cl. 181, 185 (1998), *rev'd on other grounds*, 168 F.3d 24 (Fed.Cir.1999). "The CSRA encompasses personal [sic] actions including '(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less.' " *Abramson v. United States*, 42 Fed.Cl. 326, 332 (1998) (quoting 5 U.S.C. § 7512(1)-(5) (1994)). The plaintiffs in these cases have not suffered an adverse personnel action or any of the actions encompassed by the CSRA.

■ The decision in *Bradley v. United States*, 42 Fed.Cl. 333 (1998), also clarifies the type of adverse personnel actions that are encompassed by the CSRA. In *Bradley v. United States*, the plaintiffs alleged that the defendant wrongfully reduced the plaintiffs' pay when it retroactively applied the Law Enforcement Availability Pay Act of 1994. *See Bradley v. United States*, 42 Fed.Cl. at 333. The defendant relied on the language of 5 U.S.C. § 5545a(e)(2) which states that "[i]nvoluntary reduction in pay resulting from a denial of certification ... shall be a reduction in pay for purposes of section 7512(4) of this title." 5 U.S.C. § 5545a(e)(2); *see Bradley v. United States*, 42 Fed.Cl. at 336. The defendant argued that, because adverse personnel actions as defined by the CSRA include a reduction in pay, the MSPB had exclusive jurisdiction under *United States v. Fausto* over plaintiffs' claims. *See Bradley v. United States*, 42 Fed.Cl. at 336. The United States Court of Federal Claims determined that the defendant's statement of the law was correct, but that it had been misapplied to the facts of the case before the court.

Plaintiffs did not suffer a reduction in pay as a result of a denial of certification.... "There is no dispute that plaintiffs have

never lost their certification status, nor have they alleged a denial of certification of availability pay." Pl. Reply (10/22/96) at 2. Thus, plaintiffs' claims are appropriately classified as ones for withholding pay as a result of miscalculation on the part of the government, rather than as claims based on denial of classification.

In *Chaney v. Veterans Administration,* 906 F.2d 697 (Fed.Cir.1990), the Federal Circuit held that the MSPB lacked jurisdiction over a claim concerning the calculation of a pay raise. *Id.* at 698. The plaintiff in that case became eligible for pay raises but claimed that the raises were not calculated properly under the law. *Id.* The court held that MSPB jurisdiction arises only when "an ascertainable lowering, at the time of the personnel action, of an employee's present or future pay occurs." *Id.* at 698 (citing *Garbacz v. United States,* 228 Ct.Cl. 309, 656 F.2d 628 (1981)).

As in *Chaney,* the plaintiffs in this case seek retroactive payments based on an alleged miscalculation or misconstruction of applicable legislation. The reduction in pay which plaintiffs allege is not an adverse personnel action as contemplated in the CSRA. Plaintiffs' claims are merely for unpaid salary for time actually worked. *Bradley v. United States,* 42 Fed.Cl. at 336. Just as in *Chaney v. Veterans Administration* and *Bradley v. United States,* the plaintiffs' claims in these cases are for "unpaid salary for time actually worked." *Id.* The plaintiffs do not allege entitlement as a result of a mistaken adverse personnel action, but seek overtime compensation, and/or premium pay under FLEPRA, for work they completed as DIs. As the CSRA does not cover such claims, the MSPB does not have jurisdiction over those claims.

■ Moreover, in *Bosco v. United States,* the United States Court of Appeals for the Federal Circuit stated that there was a lack of "any evidence in the [CSRA's] legislative history that the Congress was seeking to streamline the civil service by abrogating judicial review rights for personnel actions unrelated to an individual's performance." *Bosco v. United States,* 976 F.2d at 715; *see also Romero v. United States,* 38 F.3d at

1211; *Holley v. United States,* 124 F.3d at 1466–67. The distinction that Congress articulated in the Technical and Miscellaneous Civil Service Amendments Act of 1992, when defining the term "law enforcement officer" in the premium pay statutes incorporated in FLEPRA, is critical to a determination of jurisdiction: "It is the sense of the Congress that—(i) the provisions of section 5541(3) of title 5, United States Code (as added by section 2(40)(C) of this Act)—(I) are enacted only for the purposes of pay and not for the purposes of retirement." Pub L. No. 102–378, § 2(40)(D), 106 Stat. 1346 (found at 5 U.S.C. § 5541 note (1994)). This certainly does not suggest, as the government argues, that the Congress intended to submit FLEPRA claims to the administrative process mandated in the retirement statutes. Instead, this court holds that the pay provisions of FLEPRA that do not relate to adverse personnel actions are outside the purview of the retirement process, and, for cases arising pursuant to those provisions, jurisdiction is properly vested in the United States Court of Federal Claims. The defendant's motion to dismiss premised upon the argument that this issue falls within the exclusive jurisdiction of the MSPB is denied.

## II. Exhaustion of Administrative Remedies

The defendant also argues that plaintiffs' claims are "premature because they have yet to exhaust their administrative remedies." The plaintiffs respond by noting that "[s]ince there is no statute mandating any administrative remedy for the plaintiffs' FLEPRA claims, the question whether they must exhaust is committed to the sound discretion of the Court as governed by the principles set out by the Supreme Court in *McCarthy v. Madigan,* 503 U.S. 140, 144, 147–49, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)."

■ "The doctrine of exhaustion of administrative remedies is one among related doctrines-including abstention, finality, and ripeness-that govern the timing of federal-court decisionmaking." *McCarthy v. Madigan,* 503 U.S. at 144, 112 S.Ct. 1081. The doctrine is well established in the jurisprudence of administrative law, *McKart v. United States,*

395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), and provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *accord Sandvik Steel Co. v. United States,* 164 F.3d 596, 599 (Fed.Cir.1998); *Burlington N. R.R. Co. v. United States,* 752 F.2d 627, 629 (Fed.Cir.1985).

When deciding whether to require exhaustion of administrative remedies, the court first looks to congressional intent as expressed in the statute. *See McCarthy v. Madigan,* 503 U.S. at 144, 112 S.Ct. 1081; *see also Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 501–502, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. at 144, 112 S.Ct. 1081 (citations omitted); *accord Maggitt v. West,* 202 F.3d 1370, 1377 (Fed.Cir.2000).[4]

The mandate that a plaintiff exhaust all administrative remedies prior to instituting a lawsuit in this court is intended to "serve[ ] the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. In other words, the doctrine seeks to affirm the authority Congress has given administrative agencies to administer programs or interpret statutes. *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. In addition, it promotes judicial efficiency by mooting judicial controversies that can be decided by the agency with special expertise, providing a useful record for controversies that cannot, and avoiding "piecemeal appeals." *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081.

However, " 'administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.' " *McCarthy v. Madigan,* 503 U.S. at 146, 112 S.Ct. 1081 (quoting *West v. Bergland,* 611 F.2d 710, 715 (8th Cir.1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980)). Individual litigant's interests weigh against exhaustion in three broad circumstances. First, requiring exhaustion of the administrative remedy may prejudice the plaintiff. *Maggitt v. West,* 202 F.3d at 1377 (citing *McCarthy v. Madigan,* 503 U.S. at 146–48, 112 S.Ct. 1081). "Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." *McCarthy v. Madigan,* 503 U.S. at 147, 112 S.Ct. 1081. In *Gibson v. Berryhill,* 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), although discussing state administrative remedies, the United States Supreme Court wrote: "State administrative remedies have been deemed inadequate by federal courts and hence not subject to the exhaustion requirement ... [m]ost often ... because of delay by the agency ...." Such delay is not characterized by any specific time limit in which to respond to claims. *See, e.g., Walker v. Southern Ry. Co.,* 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), *reh'g denied,* 385 U.S. 1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (1967) (holding that plaintiffs are not required to wait ten years or more on the administrative board to decide their claim); *Smith v. Illinois Bell Tel. Co.,* 270 U.S. 587, 591–92, 46 S.Ct. 408, 70 L.Ed. 747 (1926) (finding that an injured public service company "is not required indefinitely to await a decision of the rate-making tribunal before applying to a federal court. . . .").

Second, the administrative remedy may be inadequate because, even if an agency can

---

4. *Cf. Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) ("[W]here the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review only when expressly required by *statute* or when an agency *rule* requires appeal before review and the administrative action is made inoperative pending that review. Courts are not free to impose an exhaustion requirement as a rule of judicial administration where the agency action has already become 'final' under 10(c) [of the APA]."). The court also wrote: "Of course, the exhaustion doctrine continues to apply as a matter of judicial discretion in cases not governed by the APA." *Id.* at 153–54, 113 S.Ct. 2539. The instant cases are not governed by the APA.

adjudicate the issue presented, it may not have authority to grant the type of relief requested. *McCarthy v. Madigan*, 503 U.S. at 147, 112 S.Ct. 1081 (citing *Gibson v. Berryhill*, 411 U.S. at 575 n. 14, 93 S.Ct. 1689;) *see also McNeese v. Board of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (finding that student plaintiffs did not have to exhaust administrative remedies when the school superintendent did not have authority to grant the requested relief).

Third, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. at 148, 112 S.Ct. 1081 (citing *Gibson v. Berryhill*, 411 U.S. at 575 n. 14, 93 S.Ct. 1689; *Houghton v. Shafer*, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968)). For example, the United States Supreme Court in *Houghton v. Shafer* held that it would be futile to require the petitioner to exhaust the administrative remedy of appeal to the Attorney General of Pennsylvania, or another officer, in light of the Attorney General's submission that the rules were "validly and correctly applied to petitioner" and "strictly enforced throughout the entire correctional system ...." *Houghton v. Shafer*, 392 U.S. at 640, 88 S.Ct. 2119.

 The plaintiffs are correct in stating that "[s]ince there is no statute mandating any administrative remedy for the plaintiffs' FLEPRA claims, the question whether they must exhaust is committed to the sound discretion of the Court as governed by the principles set out by the Supreme Court in *McCarthy v. Madigan*, 503 U.S. 140, 144, 147–49, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)." As previously noted, FLEPRA does not mention an administrative prerequisite to filing a suit, in contrast to the federal retirement statutes which have explicit provisions for the administrative process to file and review claims. *See* 5 U.S.C. § 8347(d)(1); 5 U.S.C. § 8461(e). Given that Congress has not explicitly required exhaustion of administrative remedies for claims under FLEPRA, this court has discretion to determine if exhaustion should be required by evaluating whether the plaintiff's interests in having access to a judicial forum outweigh the government's interest in administrative autonomy. *See McCarthy v. Madigan*, 503 U.S. at 144, 146, 112 S.Ct. 1081.

 This court finds that requiring the plaintiffs to exhaust administrative channels could cause further prejudice to plaintiffs' attempts to obtain relief because of the "unreasonable" and "indefinite timeframe" of DOJ's and DEA's administrative remedial mechanisms. *See McCarthy v. Madigan*, 503 U.S. at 147, 112 S.Ct. 1081. Several plaintiffs submitted their applications for retroactive LEO retirement credit to the DEA and/or JMD as early as June of 1989. The majority of the claims were filed over the course of the next several years. During that time, despite this court's frequent urging to the defendant to resolve the plaintiffs' claims on the administrative level, and stays of proceedings of the cases in this court in response to requests from the parties to await the outcome of retirement claims at the DOJ and the MSPB, the defendant still has not resolved most of the pending claims.

Of the 145 DIs who have applied for retroactive LEO retirement credit, nine DIs received final JMD orders in 1995 denying their applications. All nine DIs appealed the JMD decisions to the MSPB and their cases were consolidated with two designated cases proceeding on appeal (*Hannon* and *Townsend*). As noted above, in 1997, MSPB Administrative Judge Jenkins issued an order reversing JMD's decisions in the two designated cases. DOJ successfully appealed Judge Jenkins' decision to the MSPB, which issued two final decisions in June and August of 1999 denying LEO retirement credit to the two plaintiffs. The remaining seven plaintiffs' claims for LEO retirement credit were stayed at the MSPB pending the resolution of two pending appeals at the United States Court of Appeals for the Federal Circuit. In a status report to this court, the defendant claims that, as of August 20, 2000, the JMD had issued final decisions on 65 additional applications, or a total of 74 of the 145 applications. The plaintiffs, however, only can confirm that the JMD has issued 52 decisions. If the plaintiffs are correct, two thirds of the applicants are still awaiting a

final administrative decision from the JMD. Even if the defendant could show that all of the alleged 74 JMD decisions indeed overlap with plaintiffs in this court, more than one half of the claims filed still remain to be resolved administratively. As noted, this delay has occurred despite repeated urging to the defendant to resolve these applications internally and expeditiously. This court finds that the DOJ's inability to address administratively the plaintiffs' claims with the agency has negatively impacted the plaintiffs. For an extensive period of time, the DOJ has had an opportunity to address the pending applications filed by 145 of the plaintiffs in this case. Instead, the DOJ has delayed resolving these matters in a timely fashion. Although patient, the plaintiffs in some instances have been in bureaucratic limbo for over ten years. As noted previously, the United States Supreme Court supports a judge's decision not to mandate exhaustion in the wake of prejudicial and inexplicable administrative delay. *See Gibson v. Berryhill,* 411 U.S. at 575 n. 14, 93 S.Ct. 1689.

The court also finds that it should not require the plaintiffs to exhaust administrative channels in these cases because of the likely futility of such pursuits. The DOJ and DEA have a predetermined position regarding the issue of LEO credit for DI's. In the instant lawsuits, the DEA and its DOJ counsel have adopted the firm position that DI's are not entitled to FLEPRA compensation and benefits that are granted to LEOs under the act. The DOJ position was evident from early in the related lawsuits in the defendant's answer to the plaintiffs' complaints in the original nine cases filed in this court. Furthermore, although the parties disagree as to the number of decisions issued to date, the parties do agree that all decisions issued by the DOJ have denied LEO retirement credit to the applicants. Moreover, as indicated above, during the proceedings at the MSPB in the cases of James T. Hannon and Ronald J. Townsend, DEA and its DOJ counsel took firm positions opposing plaintiffs' application for LEO retirement credit, which position they continued to firmly advance in the appellate proceedings in the United States Court of Appeals for the Federal Circuit. Thus, it is fair to conclude that requir-ing the plaintiffs to seek an administrative remedy from the DOJ would be futile. The defendant's motion to dismiss premised upon the argument that the plaintiffs have failed to exhaust administrative remedies is, therefore, denied.

## III. Defendant's Other Grounds for Partial Dismissal

The defendant claims that the court should dismiss all but John Partrige's FLEPRA section 403 (5 U.S.C. § 5305 note) claim for failure to state a claim upon which relief can be granted. Since plaintiff John Partrige is the only party seeking FLEPRA section 403 (5 U.S.C. § 5305 note) compensation, the parties are in agreement on this issue, thus rendering the issue moot.

The defendant argues that FLEPRA section 407 (5 U.S.C. § 5305 note) relocation pay is discretionary and, therefore, not a money-mandating statutory provision. In response, the plaintiffs note that such a decision would be dependent upon the court's conclusion as to whether the plaintiffs qualified as LEOs. The court is in agreement with the plaintiffs that it is premature for the court to address the FLEPRA section 407 (5 U.S.C. § 5305 note) issue, until there has been a determination as to whether DIs meet the definition of an LEO.

The defendant also argues that a number of the plaintiffs' claims under the Back Pay Act are barred by the six-year statute of limitations. In the pleadings and at the oral argument, plaintiffs' counsel conceded that the plaintiffs are aware of the six-year statute of limitations period established by 28 U.S.C. § 2501, and that, therefore, the plaintiffs "do not seek reimbursement for unpaid administratively uncontrollable overtime compensation for any period before August 2, 1985." Thus, with this agreement by the parties, the statute of limitations issue is moot, and any claims for compensation prior to August 2, 1985 are dismissed.

In addition, the defendant contends that the plaintiffs seek injunctive and/or declaratory relief. At the oral argument it was determined that, in fact, the plaintiffs' seek "entitlement to back pay" and not injunctive

and/or declaratory relief. This was agreed to by both parties at the oral argument, therefore mooting this issue as raised in the defendant's partial motion to dismiss.

### CONCLUSION

For the reasons discussed above, the defendant's partial motion to dismiss for lack of jurisdiction and/or for failure to state a claim upon which relief can be granted is, hereby, **DENIED**.

**IT IS SO ORDERED.**