**John CROWLEY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 94–711C.

United States Court of Federal Claims.

April 18, 2003.

Irving Kator, Kator, Parks & Weiser, P.L.L.C., Washington, D.C., Cathy A. Harris, for plaintiff.

Scott D. Austin, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., James M. Kinsella, Deputy Director, David M. Cohen, Director, for defendant. James E. Hicks, Office of Chief Counsel, Drug Enforcement Administration, of counsel.

## ORDER

HORN, Judge.

The court is in receipt of defendant's Motion for Reconsideration of the court's opinion regarding the claim of John Crowley for Law Enforcement Officer (LEO) credit and Federal Law Enforcement Pay Reform Act (FLEPRA) benefits for his duties with the Drug Enforcement Agency (DEA) at the Department of Justice (DOJ) from October 1, 1991 through April 1, 2001, and the plaintiff's responses.

## FINDINGS OF FACT

The court's August 30, 2002 opinion in this case determined Mr. Crowley's eligibility for LEO credit and FLEPRA benefits for his duties as a Diversion Investigator (DI) with the DEA. See Crowley v. United States, 53 Fed.Cl. 737 (2002). Mr. Crowley worked for the DEA and its predecessor, the Bureau of Narcotics and Dangerous Drugs (BNDD) for almost thirty years.[1] The BNDD hired Mr. Crowley in 1973 as a Diversion Investigator, with primary duties to investigate the diversion of controlled substances to addicts and drug dealers by doctors, pharmacists, manufacturers and distributors. Mr. Crowley's responsibilities involved investigating doctors and pharmacists who were suspected of distributing controlled substances outside of the usual course of professional practice. See Crowley v. United States, 53 Fed.Cl. at 744.

In the opinion, in order to determine Mr. Crowley's qualifications for LEO credit, the court addressed four periods of his employ-

---

1. Neither party has challenged the factual findings of the court's opinion concerning Mr. Crowley's employment history with the DEA, which are, therefore, incorporated into this order. In this motion for reconsideration, the defendant only asserts that Mr. Crowley did not file any administrative claims after June 15, 1997.

ment, which he alleged entitled him to LEO credit. First, the court examined Mr. Crowley's role as a Diversion Investigator in Boston, Massachusetts from 1973 through 1986. At trial, the court heard testimonial evidence that as a Diversion Investigator, Mr. Crowley spent the majority of his time investigating criminal activities, which often included contact with dangerous individuals and situations. *See Crowley v. United States,* 53 Fed. Cl. at 743–44.

The court next reviewed Mr. Crowley's duty as a Diversion Group Supervisor from 1986 through 1991. In this capacity, Mr. Crowley conducted many of the same activities he had pursued as a Diversion Investigator, however, in a supervisory capacity. The court heard evidence that Mr. Crowley encountered armed, criminal suspects and even assisted local police in serving arrest warrants on armed drug dealers, who often resisted arrest and were taken into custody through force, as well as supervised such activity. *See Crowley v. United States,* 53 Fed.Cl. at 744, 751–52.

The court also reviewed Mr. Crowley's role from 1991 though 1994 as a Staff Coordinator in the Office of Diversion at DEA headquarters in Arlington, Virginia. As a Staff Coordinator, Mr. Crowley supported, funded, advised, monitored and coordinated investigations conducted by various divisions of Diversion Investigators. During his tenure at DEA headquarters, Mr. Crowley also was selected to work as a Staff Coordinator in the newly formed International Drug Unit. *See Crowley v. United States,* 53 Fed.Cl. at 754–55.

Finally, the court reviewed Mr. Crowley's duties as a Diversion Group Supervisor in Boston, Massachusetts, from 1994 through 2001. In this capacity, Mr. Crowley held many of the same responsibilities he had held when he was previously a Group Supervisor, including paying and directing informants, effecting arrests and investigating criminal drug related activity. *See Crowley v. United States,* 53 Fed.Cl. at 756.

In January, 1977, Donald E. Miller, Acting Deputy Administrator of the DEA, issued a memorandum clarifying the DEA's policy regarding the duties of Diversion Investigators and limiting their law enforcement roles and responsibilities. The memorandum restricted the Diversion Investigators' participation in undercover evidence purchases, directing informants, conducting moving surveillance and executing search warrants. In 1984, Francis M. Mullen, then DEA Administrator, restricted the responsibilities of Diversion Investigators even further by issuing another memorandum restricting the ability of Diversion Investigators to conduct undercover activities of any kind, from direct involvement in the execution of arrest or search warrants, and from conducting surveillance or paying informants. *See Crowley v. United States,* 53 Fed.Cl. at 744–45. Despite these restrictions, it was clear from the trial testimony that Mr. Crowley was not shielded from participating in such activities or from the dangers associated with his actual job responsibilities on a daily basis. *Id.* at 746

In 1990, Congress established a retirement and pay benefit system for federal law enforcement officers, making them eligible for enhanced pay and early retirement pursuant to the Federal Law Enforcement Pay Reform Act of 1990, Pub.L. No. 101–509, §§ 401–412, 104 Stat. 1389, 1465–69. The regulations setting forth the standards for qualifying as an LEO are found at 5 C.F.R. §§ 831.903—831.911, and identify two methods for claiming LEO credit. The first method for receiving LEO credit occurs when an agency determines that a position qualifies for LEO credit. *See* 5 C.F.R. §§ 831.903(a), 831.904(a).[2] The second method for receiving LEO credit involves the claimant filing an administrative claim through the Office of Personnel Management (OPM), or the relevant agency personnel office, in the instant case, the Justice Management Division (JMD) of the DOJ to request credit for service. *See* 5 C.F.R. § 831.906(b).[3] The granting of LEO status entitles the claimant to FLEPRA benefits. Mr. Crowley submitted administrative claims

---

**2.** Before 1994, this regulation was in 5 C.F.R. §§ 831.905–831.906 (1993).

**3.** Before 1994, this regulation was in 5 C.F.R. § 831.908(b) (1993).

to the OPM, which credited him with primary LEO credit for the period from June 15, 1974 through June 15, 1986, secondary supervisory LEO credit from June 16, 1986 through February 24, 1991, and secondary administrative credit from February 25, 1991 through September 30, 1991. *See Crowley v. United States,* 53 Fed.Cl. at 757.

Following February, 1991, Mr. Crowley filed annual administrative claims for LEO credit with OPM, and later, as required, with his employing agency, the JMD of DOJ. Neither JMD nor DOJ acted upon Mr. Crowley's claims until 1994, when Deputy Assistant Administrator for Personnel, Jean D. Mathis, found that Mr. Crowley's position as a Staff Coordinator at DEA headquarters "has been determined by OPM to meet the law enforcement criteria; that is, it is an administrative position for which primary law enforcement experience is the prerequisite. Therefore, continued law enforcement coverage in the secondary category is recommended for DI Crowley." *Crowley v. United States,* 53 Fed. Cl. at 758. In August, 1999, almost five years later, the JMD reversed this decision and denied all of Mr. Crowley's administrative claims for LEO credit from October 1, 1991 through June 15, 1997.

Mr. Crowley filed suit in this court seeking LEO credit in the secondary administrative category from October 1, 1991 through October 30, 1994 and LEO. credit in the secondary supervisory category from October 31, 1994 through October 1, 2001. Mr. Crowley also sought overtime pay under 5 U.S.C. § 5542 (2000), Administratively Uncontrollable Overtime (AUO) pay pursuant to 5 U.S.C. § 5545(c)(2) and availability pay under 5 U.S.C. § 5545(a). Following trial held in Boston, Massachusetts and Washington, D.C., the court denied Mr. Crowley's claims for overtime pay, AUO and availability pay, but found that Mr. Crowley qualified for LEO credit from October 1, 1991 through April 1, 2001, entitling him to premium pay under FLEPRA § 404. *See Crowley v. United States,* 53 Fed.Cl. at 792.

## DISCUSSION

A motion for reconsideration is permitted under Rule 59 of the Rules of the United States Court of Federal Claims (RCFC), which provides that reconsideration "may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59 (a)(1).

The United States Court of Appeals for the Federal Circuit has stated that: "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.), *reh'g denied* (1990). *See Citizens Fed. Bank, FSB v. United States,* 53 Fed.Cl. 793, 794 (2002) (citing *Yuba Natural Res., Inc. v. United States,* 904 F.2d at 1583). To prevail, a motion for reconsideration "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Circle K Corp. v. United States,* 23 Cl.Ct. 659, 664–65 (1991); *see also Ammex, Inc. v. United States,* 52 Fed.Cl. 555, 557 (2002); *Stelco Holding Co. v. United States,* 42 Fed.Cl. 156, 157 (1998); *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. 157, 164 (1993), *aff'd,* 50 F.3d 1021 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1995). In order to prevail on a motion for reconsideration, the movant must show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice. *See Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992); *see also Strickland v. United States,* 36 Fed.Cl. 651, 657 (1996). "A court, therefore, will *not* grant a motion for reconsideration if the movant 'merely reasserts ... arguments previously made ... all of which were carefully considered by the Court.' " *Ammex, Inc. v. United States,* 52 Fed.Cl. at 557 (quoting *Principal Mut. Life Ins. Co. v. United States,* 29 Fed.Cl. at 164) (emphasis in original); *see also Frito-Lay of P.R., Inc. v. Canas,* 92 F.R.D. 384, 390 (D.P.R.1981).

In its motion for reconsideration, the defendant argues that plaintiff is not entitled to FLEPRA benefits for any period after June

15, 1997. The defendant bases this argument on its allegation that the plaintiff, Mr. Crowley, did not file administrative claims for LEO credit or FLEPRA benefits in this time period, and that "Plaintiff's Failure To File An Administrative Claim For Any Time Period After June 15, 19[9]7 Precludes An Award Of FLEPRA Benefits For That Period." Defendant does not appear to dispute that Mr. Crowley filed administrative claims from 1991 through 1997 and that those claims were denied by DOJ on August 16, 1999.

Before trial, the court responded to a government motion to dismiss, which similarly argued "This Court Should Dismiss The Plaintiffs' FLEPRA Claims Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies And These Claims Are Accordingly Not Yet Ripe." The defendant filed its motion in all the consolidated cases *Hannon v. United States,* including Mr. Crowley's case. After briefing by both parties, the court responded to the government's motion with an eighteen-page opinion addressing the defendant's exhaustion argument in depth and denying the motion. *See Hannon v. United States,* 48 Fed.Cl. 15 (2000). When the court issued its opinion dismissing defendant's motion, it applied the opinion to all plaintiffs in the consolidated cases, including Mr. Crowley's. While the Westlaw version of the court's opinion lists only the *Hannon* case number, the court's actual opinion filed with the Clerk of the Court and issued to all plaintiffs and defendant on October 6, 2000, clearly stated "Case Nos. 91–1334C, *et al.,*" which includes all consolidated cases. Therefore, when the court denied the defendant's motion, and found that the consolidated plaintiffs were not required to exhaust administrative remedies, it applied this ruling to all plaintiffs in the cases consolidated under *Hannon v. United States, et al.,* including Mr. Crowley's case. Thus, the issue raised by defendant was addressed before the Crowley case went to trial.

"The doctrine of exhaustion of administrative remedies is one among related doctrines-including abstention, finality, and ripeness-that govern the timing of federal-court decision making." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The doctrine is well established in the jurisprudence of administrative law, *see McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), and provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *accord Sandvik Steel Co. v. United States,* 164 F.3d 596, 599 (Fed.Cir.1998); *Burlington N. R.R. Co. v. United States,* 752 F.2d 627, 629 (Fed.Cir.1985).

When deciding whether to require exhaustion of particular administrative remedies, the court first looks to congressional intent as expressed in the relevant statute. *See McCarthy v. Madigan,* 503 U.S. at 144, 112 S.Ct. 1081; *see also Patsy v. Bd. of Regents of Fla.,* 457 U.S. 496, 501–02, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). "Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. at 144, 112 S.Ct. 1081 (citations omitted); *accord Maggitt v. West,* 202 F.3d 1370, 1377 (Fed.Cir.2000).

The mandate that a plaintiff exhaust all administrative remedies before instituting a lawsuit in this court is intended to "serve the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. In other words, the doctrine seeks to affirm the authority Congress has given administrative agencies to administer programs or interpret statutes. *See McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081. In addition, it promotes judicial efficiency by mooting judicial controversies that an agency can decide with special expertise. *See McCarthy v. Madigan,* 503 U.S. at 145, 112 S.Ct. 1081; *see also Thompson Consumer Elecs., Inc. v. United States,* 247 F.3d 1210, 1214 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001).

However, " 'administrative remedies need not be pursued if the litigant's interests

in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further.'" *McCarthy v. Madigan*, 503 U.S. at 146, 112 S.Ct. 1081 (quoting *West v. Bergland*, 611 F.2d 710, 715 (8th Cir.1979), *cert. denied*, 449 U.S. 821, 101 S.Ct. 79, 66 L.Ed.2d 23 (1980)); *see also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13, 120 S.Ct. 1084, 146 L.Ed.2d 1, *reh'g denied*, 529 U.S. 1095, 120 S.Ct. 1738, 146 L.Ed.2d 656 (2000) ("Doctrines of 'ripeness' and 'exhaustion' contain exceptions, however, which exceptions permit early review when, for example, the legal question is 'fit' for resolution and delay means hardship, or when exhaustion would prove 'futile[.]'" citing *McCarthy v. Madigan*, 503 U.S. at 147–48, 112 S.Ct. 1081) (other citations omitted).

■ Individual litigant's interests weigh against exhaustion in three broad circumstances. First, exhaustion may not be required when exhaustion of the administrative remedy may prejudice the plaintiff. *See Maggitt v. West*, 202 F.3d at 1377 (citing *McCarthy v. Madigan*, 503 U.S. at 146–48, 112 S.Ct. 1081). "Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." *McCarthy v. Madigan*, 503 U.S. at 147, 112 S.Ct. 1081. In *Gibson v. Berryhill*, 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), although discussing state administrative remedies, the United States Supreme Court wrote: "State administrative remedies have been deemed inadequate by federal courts and hence not subject to the exhaustion requirement ... [m]ost often ... because of delay by the agency ...." Such delay is not characterized by any specific time limit in which to respond to claims. *See, e.g., Walker v. Southern Ry. Co.*, 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), *reh'g denied*, 385 U.S. 1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (1967) (holding that plaintiffs are not required to wait ten years or more on the administrative board to decide their claim); *Smith v. Illinois Bell Tel. Co.*, 270 U.S. 587, 591–592, 46 S.Ct. 408, 70 L.Ed. 747 (1926) (finding that an injured public service company "is not required indefinitely to await a decision of the rate-

making tribunal before applying to a federal court ....").

■ Second, the administrative remedy may be inadequate because, even if an agency can adjudicate the issue presented, it may not have authority to grant the type of relief requested. *McCarthy v. Madigan*, 503 U.S. at 147, 112 S.Ct. 1081 (citing *Gibson v. Berryhill*, 411 U.S. at 575 n. 14, 93 S.Ct. 1689); *see also McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 675, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) (finding that student plaintiffs did not have to exhaust administrative remedies when the school superintendent did not have authority to grant the requested relief).

■ Third, "an administrative remedy may be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. at 148, 112 S.Ct. 1081 (citing *Gibson v. Berryhill*, 411 U.S. at 575 n. 14, 93 S.Ct. 1689; *Houghton v. Shafer*, 392 U.S. 639, 640, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968)). For example, the United States Supreme Court in *Houghton v. Shafer* held that it would be futile to require the petitioner to exhaust the administrative remedy of appeal to the Attorney General of Pennsylvania, or another officer, in light of the Attorney General's submission that the rules were "validly and correctly applied to petitioner" and "strictly enforced throughout the entire correctional system ...." *Houghton v. Shafer*, 392 U.S. at 640, 88 S.Ct. 2119.

■ In the court's previous opinion denying defendant's motion to dismiss, the court found that Congress did not explicitly require exhaustion of administrative remedies under FLEPRA, and that FLEPRA does not mention any administrative prerequisites to filing a suit. *See* 5 U.S.C. § 5305; 5 U.S.C. § 8347(d)(1); 5 U.S.C. § 8461(e); *Hannon v. United States*, 48 Fed.Cl. at 23, 27. *See also Aldrich v. United States*, 31 Fed.Cl. 554, 556 (1994), *aff'd*, 56 F.3d 83, 1995 WL 298831 (Fed.Cir.1995) (finding that Congress did not mandate administrative appeals of premium pay decisions); *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed.Cir.2002) (citing *McCar-*

*thy v. Madigan* and holding that when Congress does not clearly mandate exhaustion, its requirements are left to the discretion of the trial court).

While the JMD had the authority to grant the type of relief requested, specifically, to qualify Mr. Crowley for LEO credit and FLEPRA benefits, the court's reasoning for not requiring Mr. Crowley to exhaust his administrative remedies before bringing suit in this court were two-fold. First, requiring Mr. Crowley to pursue his administrative remedies would have been futile because of the JMD's demonstrated failure to adjudicate LEO claims in a timely manner. *See McCarthy v. Madigan,* 503 U.S. at 147, 112 S.Ct. 1081 (holding that unreasonable or indefinite delays for administrative action can prejudice a plaintiff). As found in the court's previous opinion, of the 145 diversion investigators who had applied for retroactive LEO retirement credit, only nine had received final decisions in 1995. As of August, 2000, still less than half of the applications had been acted upon. *See Hannon v. United States,* 48 Fed.Cl. at 27–28. Subsequently, JMD did act on, but continued to systematically reject, a number of additional claims of other plaintiffs in the consolidated cases. In Mr. Crowley's case, he filed claims for LEO credit beginning in February, 1992, and it was not until July, 1999 that the OPM summarily denied his benefits. *See Crowley v. United States,* 53 Fed.Cl. at 757–58. This was a full seven years after Mr. Crowley filed his first claim for LEO credit. Thus, to require Mr. Crowley to continually file LEO claims would have been futile and contrary to established Supreme Court precedent, since the JMD continually delayed in making final determinations of FLEPRA benefits, and Mr. Crowley could conceivably have retired before any decisions on his claims were issued. *See McCarthy v. Madigan,* 503 U.S. at 147, 112 S.Ct. 1081.

Second, requiring Mr. Crowley to continually file administrative claims would have been futile because the JMD had demonstrated predetermination of the outcome for the type of claims at issue. *See McCarthy v. Madigan,* 503 U.S. at 148, 112 S.Ct. 1081 (holding that "an administrative remedy may

be inadequate where the administrative body is shown to be biased or has otherwise predetermined the issue before it."); *Houghton v. Shafer,* 392 U.S. at 640, 88 S.Ct. 2119 (holding that appealing to an administrative agency is futile when the agency strictly applies a policy to each case); *Aldrich v. United States,* 31 Fed.Cl. at 557 (holding that "the interests of the individual 'weighs heavily against requiring administrative exhaustion' ... where the administrative body is shown to have predetermined the issue," citing *McCarthy v. Madigan,* 503 U.S. at 140, 112 S.Ct. 1081). Specifically, this court determined that the DEA and DOJ adopted the position that Diversion Investigators do not qualify for LEO credit or FLEPRA benefits, regardless of their individual assignments, and this predetermination was reflected in the JMD's August 1999 decision summarily denying all of Mr. Crowley's administrative claims from October 1991 through June 15, 1997, as well as the consistent denial of all similar claims submitted by other plaintiffs in the consolidated action. *See Crowley v. United States,* 53 Fed.Cl. at 758. Because the DOJ proved its lack of an open mind and demonstrated predetermination of the issue by summarily refusing to assign Mr. Crowley and the other Diversion Investigators LEO credit, this court determined that their continual efforts to file administrative claims would be futile.

The defendant states in its motion for reconsideration that in the earlier opinion on the motion to dismiss, the court addressed "solely whether the Court has jurisdiction, not whether the filing of an administrative claim is a regulatory prerequisite to FLEPRA benefits." While the court addressed whether it had jurisdiction to hear the cases, it also analyzed the regulatory requirements for obtaining FLEPRA benefits. For example, in its October 6, 2000 opinion, the court stated that "FLEPRA does not mention an administrative prerequisite to filing a suit, in contrast to the federal retirement statutes which have explicit provisions for the administrative process to file and review claims." *Hannon v. United States,* 48 Fed.Cl. at 27. As a practical consideration, the court could not have concluded that it had jurisdiction if it had not first determined whether there

were any administrative, regulatory requirements the plaintiffs were required to pursue before bringing their cases to this court.

The defendant's motion for reconsideration also argues that "the Court's conclusion concerning exhaustion of administrative remedies was premised upon the futility of requiring plaintiffs *to await the agency's decision on pending administrative claims.*" (emphasis in original). By advancing this argument, the defendant appears to assume that the court's written discussion on exhaustion of administrative remedies applies only to those plaintiffs who had actually filed a claim with the administrative agency and were awaiting a final decision on those claims. As the plaintiff stated, "Defendant apparently wants the Court to find a difference between plaintiffs who filed administrative claims but who did not wait for final decisions and those plaintiffs who never filed administrative claims." The court does not take such a narrow view of its previous opinion, nor did it intend to limit its discussion only to those plaintiffs who have filed administrative claims.

When the court filed its opinion denying defendant's motion to dismiss, there were 260 Diversion Investigators with cases pending in this court, of whom only 145 plaintiffs had filed administrative claims with the relevant agency. *See Hannon v. United States,* 48 Fed.Cl. at 19. Had the court intended to exercise jurisdiction only over those investigators with pending claims, it would have clearly identified this intent. Although the court did not readdress the exhaustion argument in its trial opinion in this case, the defendant cannot expect that the efficiency of the judicial process requires the court to address claims previously decided.

Under the circumstances of the case before the court, and during the time period in question, the court found and finds no difference between the Diversion Investigator who had filed a claim, and the Diversion Investigator who had not filed an administrative claim with a system which was both untimely in processing the claims and which had predetermined the result. In *Cienega Gardens v. United States,* 265 F.3d 1237, 1248 (Fed. Cir.2001), the United States Court of Appeals

for the Federal Circuit found that ripeness and jurisdiction were not dependant on a plaintiff filing an administrative claim in cases in which it would have been futile to file prepayment requests to the Department of Housing and Urban Development because the agency had no discretion to deviate from statutory requirements and approve the requests. In the instant case, the futility has been demonstrated by DOJ's refusals and laggard actions on many similar claims and DOJ's clear predetermination of the issues presented by similar claims as a result of a pattern of consistent denials.

Neither the plaintiff, the defendant, nor any future plaintiff in a similar matter, however, should construe the court's decision as permitting an open avenue to circumvent JMD's or any other agency's administrative process. The need to advise an agency of a party's claim against the agency is sound public policy in normal circumstances. However, when the agency changes the circumstances by making claim procedures meaningless, such as in Mr. Crowley's case, the courts should be available for relief when exhaustion is demonstrated to be futile. In this case, Mr. Crowley has set forth uncontested facts demonstrating that it would have been futile for him to file further administrative claims for FLEPRA benefits with the JMD. Although under the circumstances of this case, the court draws no distinction between a Diversion Investigator who has filed an administrative claim and one who did not, other plaintiffs must demonstrate, on a case-by-case basis, that it would have been futile to submit an administrative claim. *See Cienega Gardens v. United States,* 265 F.3d at 1248.

Finally, attached to plaintiff's Opposition to Defendant's Motion for Reconsideration, plaintiff submitted new evidence demonstrating that indeed Mr. Crowley had filed administrative claims for at least one of the years after July 15, 1997. Specifically, plaintiff submitted evidence that Mr. Crowley filed a claim for the period June 16, 1997 through June 16, 1998. The court, however, need not review nor entertain this newly offered evidence to reach its decision concerning Mr. Crowley's qualifications for LEO credit and

FLEPRA benefits. It is interesting, however, that defendant asserted that no claims had been filed by Mr. Crowley after June 15, 1997, apparently without carefully searching its own records, raising questions as to what a thorough search might reveal. The court has determined that Mr. Crowley's attempts to file administrative claims were and would have been futile because the JMD not only significantly delayed Mr. Crowley's claims, but summarily denied all claims from this and other similarly situated plaintiffs.

## CONCLUSION

The defendant asserts that the court cannot grant FLEPRA benefits to the plaintiff because he did not file administrative claims during any period after July 15, 1997. Since Congress did not require exhaustion of administrative remedies in FLEPRA cases, and because the court found exhaustion under the circumstances of this case to be futile, this court found that exhaustion of administrative remedies was not required. After reviewing the particular work and duties performed by Mr. Crowley as a Diversion Investigator, Group Supervisor and Staff Coordinator, the court determined that Mr. Crowley was entitled to LEO credit and FLEPRA benefits as described in the court's August 30, 2002 opinion. Because the defendant has not produced any newly discovered evidence to the contrary, has not raised previously unconsidered arguments, and has not demonstrated a manifest error of law or fact, the defendant's motion for reconsideration of the court's August 30, 2002 opinion is **DENIED.**

**IT IS SO ORDERED.**