474

STINSON, LYONS & BUSTAMANTE, P.A., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–771C.

United States Court of Federal Claims.

May 8, 1995.

Tracy E. Tomlin, Coral Gables, FL, for plaintiff.

Stanley E. Alderson, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### INTRODUCTION

Plaintiff, STINSON, LYONS & BUSTA-MANTE, P.A., is a law firm ("plaintiff" or "Stinson") alleging it is due money damages from the United States ("defendant" or "government") under certain *qui tam* [1] provisions of the False Claims Act, 31 U.S.C. § 3730(c)(5) and (d)(1) (1988 & Supp. V 1993). Specifically, pursuant to the foregoing provisions, plaintiff is seeking to recover a statutory share of the government's proceeds of $27 million derived from a settle-

---

1. "Qui tam" is the latin phrase meaning "who as much as." It comes from the longer latin phrase "qui tam pro domino rege quam pro si ipso in hac parte sequitur," meaning "who brings the action for the king as well as for himself." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 746 n. 3 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994) (citing *Bass Anglers Sportsman's Soc'y of America v. U.S. Plywood–Champion Papers, Inc.*, 324 F.Supp. 302, 305 (S.D.Tex.1971)).

ment with the *qui tam* defendant, where the government elected not to intervene in plaintiff's case and chose instead to seek recoupment costs from the *qui tam* defendant as an "alternate remedy" in an independent action. In view of such, defendant moves this court to dismiss plaintiff's claim for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), and, in the alternative, further moves for summary judgment pursuant to RCFC 56. This court agrees with defendant that it lacks subject matter jurisdiction over plaintiff's claim and, accordingly, grants defendant's motion to dismiss. In light of this dismissal, we do not reach the merits of defendant's alternative motion for summary judgment filed on June 30, 1994, and plaintiff's related cross-motion for summary judgment filed on August 3, 1994.

## STATUTORY BACKGROUND [2]

As early as 1863, Congress enacted the False Claims Act, presently codified at 31 U.S.C. §§ 3729–3733 (1988 & Supp. V 1993) ("FCA"), to defend the United States Treasury against the fraudulent claim practices of government contractors. Even at that time, the FCA contained several *qui tam* provisions which enlisted the assistance of private persons in disclosing fraud against the government by promising a portion of any proceeds recovered by the government. *See* 31 U.S.C. § 3730(d); *see United States ex rel. S. Prawer and Co. v. Fleet Bank of Maine*, 24 F.3d 320, 324 (1st Cir.1994). Recently, in 1986, Congress substantially amended the *qui tam* provisions to "not only ... provide the Government's law enforcers with more effective tools, but to encourage any individual knowing of Government fraud to bring that information forward" and thereby "enhance the Government's ability to recover losses sustained as a result of fraud against the Government...." S.Rep. No. 345, 99th Cong., 2d Sess. 2 (1986). This encourage-

ment for individuals to disclose information regarding fraud against the government was reflected in the 1986 amendments through "increase[d] incentives, financial and otherwise." *Id.* at 3.

Generally, the FCA provides that a private person, or "relator," may bring a *qui tam* suit against any *person* who *knowingly* presents a false or fraudulent *claim* to the government for money or property, as these highlighted terms are defined in 31 U.S.C. §§ 3729(b), (c) and 3733(1)(4). 31 U.S.C. § 3730(b). The relator brings the action on behalf of the government, which then has the option of intervening in the *qui tam* suit. *Id.* at § 3730(c)(2), (3), (c). Should the relator wish to settle the suit with the *qui tam* defendant, that "action may be dismissed only if the court and the Attorney General give written consent and their reasons for consenting." 31 U.S.C. § 3730(b)(1).

Moreover, notwithstanding its right to intervene in the *qui tam* suit, the government may pursue an alternate remedy "including any administrative proceeding to determine a civil money penalty" against the *qui tam* defendant. 31 U.S.C. § 3730(c)(5). If the government chooses this latter option, "the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section." *Id.* The rights of a relator are described in 31 U.S.C. § 3730(d)(1) as follows:

(d) **Award to Qui Tam plaintiff.**—(1) If the Government proceeds with an action brought by *a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim,* depending upon the extent to which the person substantially contributed to the prosecution of the action. Where

**2.** As an aid to an informed understanding of plaintiff's claim asserted herein, the court provides the following brief overview of the False Claims Act, 31 U.S.C. §§ 3729–3733 (1988 & Supp. V 1993). For a detailed overview of the FCA, as amended in 1986, the reader is referred to *United States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032 (6th Cir.1994); *United States ex rel. Killingsworth v. Northrop*

*Corp.*, 25 F.3d 715 (9th Cir.1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (9th Cir. 1993); *and* James B. Helmer, Jr. and Robert Clark Neff, Jr., *War Stories: A History of the Qui Tam Provisions of the False Claims Act, The 1986 Amendments to the False Claims Act, and Their Application in the United States ex rel. Gravitt v. General Electric Co. Litigation,* 18 Ohio N.U.L.Rev. 35 (1991).

the action is one which the court finds to be based primarily on disclosures of specific information, *the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds,* taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation.

31 U.S.C. § 3730(d)(1) (emphasis added).

Certain actions over which "[n]o court" possesses jurisdiction are delineated in subsection (e) of § 3730 of the FCA. Such actions include, *inter alia,* suits brought by plaintiffs based on available public information where the plaintiff was not the "original source" of the information as defined in 31 U.S.C. § 3730(e)(4)(B). 31 U.S.C. § 3730(e)(4)(A).[3] Finally, the FCA specifically provides that "[a]ny action under section 3730 may be brought in any *judicial district* in which the defendant ... can be found, resides...." 31 U.S.C. § 3732(a) (emphasis added).

### FACTS

In its complaint, Stinson alleges that this suit is to recover funds possessed by the United States, which are rightfully due plaintiff pursuant to the False Claims Act, 31 U.S.C. § 3730(c)(5) and (d)(1).[4] Stinson forcefully asserts that its right to share in a portion of the government's settlement proceeds of $27 million stems from its efforts to alert and inform the government of the fraudulent claim handling practices by Provident Life and Accident Insurance Co. ("Provident"). In this connection, during the period from December 1985 through February 1988, Stinson allegedly disclosed to the government specific claim handling information and practices performed by Provident, which

were in violation of the Medicare Secondary Payor laws.

Following thereafter, on May 8, 1988, Stinson instituted a *qui tam* suit against Provident in the United States District Court for the Southern District of Florida. On January 12, 1989, the government elected not to intervene in Stinson's suit against Provident in Florida. Although Provident challenged the subject matter jurisdiction of the Southern District Court of Florida, that court sustained its jurisdiction prior to a transfer of the case to the United States District Court for the Eastern District of Tennessee. The Tennessee District Court, however, reconsidered the transferor court's jurisdictional ruling and dismissed Stinson's claims with prejudice, holding that Stinson did not qualify as a proper *qui tam* plaintiff because Stinson did not satisfy the requirement of being an "original source" of the public information which Stinson relied on in filing its FCA claims against Provident. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life and Acc. Ins. Co.,* No. 1–89–331, slip op. at 31 (E.D.Tenn. Dec. 10, 1991) (unpublished Order and Memorandum); *see* 31 U.S.C. § 3730(e)(4)(A) and (B).

Pending Stinson's appeal of this dismissal ruling to the United States Court of Appeals for the Sixth Circuit, Stinson and Provident settled their suit for an undisclosed amount, on the following basis:

> (i) Provident agreed to reimburse the Relator for a portion of its costs and attorney's fees; and

> (ii) the Relator agreed to dismiss *with prejudice* the FCA action, while reserving its right to share in the proceeds recovered by the [United States of America] in the alternate remedy proceeding.

*See* Complaint filed on December 20, 1993, p. 6 (emphasis added).

---

**3.** Specifically, 31 U.S.C. § 3730(e)(4)(A) and (B) state as follows:

(A) *No court shall have jurisdiction* over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, *unless* the action is brought by the Attorney General or *the person bringing the action is an original source of the information.*

(B) ... "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4)(A) and (B) (emphasis added).

**4.** Plaintiff, for jurisdictional purposes, cites to 28 U.S.C. § 1491 and 31 U.S.C. §§ 3729–3733.

Provident and Stinson petitioned the Eastern District Court of Tennessee for approval of their settlement agreement pursuant to 31 U.S.C. § 3730(b)(1). Although the Attorney General had approved the settlement between Provident and Stinson subject to Stinson's *waiver* of recovery of its statutory share of "alternate remedy" proceeds, the district court's approval rejected that condition and approved the settlement absent Stinson's waiver on June 25, 1992. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life and Acc. Ins. Co.,* 811 F.Supp. 346 (E.D.Tenn.1992).

Earlier, on April 5, 1989, the government had also filed an alternative remedy complaint against Provident in the United States District Court for the District of Columbia, seeking declaratory and injunctive relief and damages. When the government, thereafter, entered into a settlement agreement with Provident through which it received $27 million dollars, Stinson duly notified the defendant that it was seeking to recover its portions of those proceeds as a *qui tam* relator. The government refused, however, to remit a portion of the $27 million settlement proceeds received from Provident, asserting for such refusal that Stinson failed to qualify as a *qui tam* relator and, therefore, was not entitled to *any* part of said proceeds.

Presently, and in this court, Stinson's complaint states that, as a *qui tam* relator, it assisted and cooperated with the government between March 1988 and January 1989, which is allegedly far in excess of the assistance required of a *qui tam* relator under the FCA, and therefore, Stinson is entitled to its rightful share of the statutory compensation. Accordingly, Stinson by this action seeks the Court of Federal Claims' assistance in recovering between 10% and 25% of the government's $27 million in settlement proceeds, pursuant to 31 U.S.C. § 3730(c)(5) and (d)(1), plus reasonable expenses and attorney fees.

## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### I. CONTENTIONS OF THE PARTIES

#### A. *Defendant's Contentions*

Defendant asserts four bases in support of its motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). First, defendant contends that Congress has, in essence, divested this court of threshold jurisdiction to entertain claims by *qui tam* plaintiffs under the FCA, by affirmatively designating the United States district courts as the appropriate forum for such claims. Defendant further avers that this court may, therefore, entertain claims pursuant to the FCA *only* where the government asserts counterclaims based on fraud, 28 U.S.C. §§ 1503, 1508. Second, defendant alleges that plaintiff is seeking monetary payment from specific funds rather than presently due monetary damages from the government and, therefore, this court lacks subject matter jurisdiction over the claim. Third, defendant contends that the "prior related suit" doctrine developed under 28 U.S.C. § 1500, bars this court's jurisdiction over plaintiff's case which was previously pending in a district court. Fourth, and finally, defendant asserts that this court should refuse to exercise jurisdiction in this case in the interest of judicial economy and comity. That is to say, this court should resist hearing this case so as to conserve judicial resources, prevent forum shopping, and decrease the litigation burden imposed on all parties where multiple suits involving similar facts are filed by plaintiffs in multiple fora.

#### B. *Plaintiff's Contentions*

Plaintiff asserts, conversely, that the $27 million in settlement proceeds received by defendant from Provident qualifies as an "alternate remedy" within the meaning of § 3730(d) of the FCA. Accordingly, plaintiff argues that in violation of the FCA, the government failed to provide it with the statutory *qui tam* relator's share of the government's settlement proceeds received from the *qui tam* defendant in a separate "alternate remedy" suit pursuant to 31 U.S.C. § 3730(c)(5) and (d)(1). By its assertion that it is the U.S. district court that has jurisdiction over *qui tam* suits, plaintiff apparently implies that the U.S. Court of Federal Claims does *not* have jurisdiction over *qui*

*tam* suits. Notwithstanding the foregoing, plaintiff alleges that the Tucker Act, 28 U.S.C. § 1491 *and* the FCA, 31 U.S.C. §§ 3730–3733, nevertheless, collectively confer upon this court subject matter jurisdiction to hear cases, such as here, involving *qui tam* plaintiffs who sue the government for money damages rather than plaintiffs who sue "on behalf of" the United States in a *qui tam·*suit. Plaintiff avers, therefore, that it is rightfully before this court, on this distinction, seeking an award of monetary remedial compensation to which it is legally entitled in view of its injury and which defendant is illegally withholding.

## II. DISCUSSION

### A. *Motion to Dismiss*

■ Plaintiff bears the burden, at the threshold, óf proving by a preponderance of the evidence this court's subject matter jurisdiction over its claims. *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993); *Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) (see citations therein). In reviewing the propriety of defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must, of course, consider the unchallenged jurisdictional facts alleged in the complaint to be true. *Reynolds,* 846 F.2d at 747; *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988). On the other hand, where the motion to dismiss challenges the jurisdictional facts alleged, this court "may consider relevant evidence in order to resolve the factual dispute." *Reynolds,* 846 F.2d at 747 (citations omitted).

### B. *Tucker Act Jurisdiction*

■ Originally enacted in 1887, the Tucker Act, 28 U.S.C. § 1491 (1988 & Supp. IV 1994), serves as the primary jurisdictional statute governing the type of claims reviewable by this court. *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976). This statute provides as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States.

28 U.S.C. § 1491(a)(1). Although this statute confers threshold subject matter jurisdiction on this court by waiving the sovereign immunity of the United States under certain conditions, it does not, *ipso facto,* confer a substantive right on parties to recover money damages from the government. *Testan,* 424 U.S. at 398, 96 S.Ct. at 953; *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) (*"Mitchell II "*); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980) (*"Mitchell I "*). It is well established, therefore, that such a substantive right to a payment of money from the government must be made with specificity and arise from either (1) an express or implied contract with the United States, (2) a prior payment made to the government for which a plaintiff seeks a refund, or (3) a federal constitutional, statutory, or regulatory law which "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Testan,* 424 U.S. at 400, 402, 96 S.Ct. at 954, 955; *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967).

■ It is this latter basis upon which plaintiff asserts this court's jurisdiction over its claim. In short, Stinson contends that, coupled with § 1491, the FCA serves as a federal statute specifically mandating the payment of remedial compensation to *qui tam* relators such as itself, where the government has recovered proceeds in an "alternate remedy" suit against the *qui tam* defendant. Specifically, plaintiff contends that pursuant to 31 U.S.C. § 3730(c)(5) and (d)(1), the government is wrongfully withholding compensation for an injury to which plaintiff is entitled as a *qui tam* relator.[5]

---

**5.** *United States, ex rel Joanne Neher v. NEC Corp.,* 11 F.3d 136 (11th Cir.1994) (holding that the

FCA's *qui tam* provisions are remedial; the *qui tam* provisions of the FCA are intended to reme-

A recent appeal in which a *qui tam* plaintiff challenged this court's dismissal of his monetary claims for lack of subject matter jurisdiction was decided by the United States Court of Appeals for the Federal Circuit, *LeBlanc v. United States,* 50 F.3d 1025 (Fed. Cir.1995). In *LeBlanc,* previous to filing his complaint in the Court of Federal Claims, Mr. LeBlanc filed a *qui tam* suit in the U.S. District Court for the District of Massachusetts on October 28, 1988, against Raytheon Company, Inc. (Raytheon) pursuant to the FCA. *United States ex rel. LeBlanc v. Raytheon Co., Inc.,* 729 F.Supp. 170 (D.Mass. 1990). The district court dismissed Mr. LeBlanc's *qui tam* suit for lack of subject matter jurisdiction finding that Mr. LeBlanc, *as a government employee,* was not a proper plaintiff to bring the suit under the FCA, notwithstanding § 3730(h). *Id.* at 177. The United States Court of Appeals for the First Circuit affirmed the district court's dismissal on the narrower grounds that Mr. LeBlanc was not the "original source" of the publicly disclosed information he relied on in bringing the suit against Raytheon and, thus, he was barred from filing his claims by § 3730(e)(4). *United States ex rel. LeBlanc v. Raytheon Co., Inc.,* 913 F.2d 17, 20 (1st Cir.1990). The United States Supreme Court denied Mr. LeBlanc's petition for certiorari. *LeBlanc v. United States,* 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991), *reh'g denied,* 501 U.S. 1270, 112 S.Ct. 17, 115 L.Ed.2d 1101 (1991). Subsequently, Mr. LeBlanc filed a suit against the government in the United States Court of Federal Claims "alleging constitutional and statutory violations, and seeking damages resulting from the government's alleged improper interference in his district court action, a portion of an alleged settlement between Raytheon and the government, and reinstatement and back pay." 50 F.3d at 1028. This court dismissed all of Mr. LeBlanc's claims by order dated November 8, 1993, under RCFC 12(b)(1) for lack of subject matter jurisdiction apparently on the grounds that such issues are justiciable only

before the Merit Systems Protection Board or the U.S. district court(s), and the Federal Circuit affirmed.

In his complaint filed in this court, Mr. LeBlanc asserted two bases for his damages claims against the government.[6] First, he argued that the government wrongfully interfered in his *qui tam* suit against Raytheon. The Federal Circuit summarily dismissed this claim as a tort claim over which the Court of Federal Claims has no subject matter jurisdiction.[7]

As an alternative basis for his damages claims, Mr. LeBlanc averred that Tucker Act jurisdiction existed based on the FCA, which allegedly confers a substantive right on *qui tam* plaintiffs to a portion of the money recovered by the government from the *qui tam* defendant. 50 F.3d at 1030–31. He argued that Congress waived the sovereign immunity of the United States by requiring the United States to share with the *qui tam* plaintiff any settlement proceeds recovered from a *qui tam* defendant whether or not the government intervened in the *qui tam* suit. *See* 31 U.S.C. § 3730(d). Therefore, LeBlanc contended, a statutory basis for the recovery of compensatory money damages existed to support the subject matter jurisdiction of the Court of Federal Claims.

This argument, similarly made here by Stinson, was firmly rejected by the Federal Circuit in *LeBlanc.* That court stated that the district court had found that Mr. LeBlanc was not a proper relator under the FCA and, therefore, he did not possess a right to recover under the statute. *Id.* Moreover, to prove damages against the United States, Mr. LeBlanc would have had to show that he possessed an entitlement to recover money under the FCA as a proper *qui tam* plaintiff and the government wrongfully denied him such entitlement. *Id.* In this regard, the Court of Appeals for the Federal Circuit explicitly held that the Court of Federal Claims has no jurisdiction "to determine that

---

dy that harm; and the recovery runs to the *qui tam* relator as "compensation for damages").

**6.** The Federal Circuit rejected Mr. LeBlanc's claims for money damages pursuant to the United States Constitution and his claim of wrongful

discharge against the government. Since Stinson has not asserted similar claims, these issues are not addressed herein.

**7.** *See Eastport S.S. Corp. v. United States,* 178 Ct.Cl. at 611, 372 F.2d at 1010.

LeBlanc had a valid *qui tam* suit under the False Claims Act. The Court of Federal Claims has no authority to make that determination because *qui tam* suits may only be heard in the district courts. 31 U.S.C. § 3732(a)." *Id.*

Here at bar, Stinson asserts a claim for compensatory monetary damages against the government based on 31 U.S.C. § 3730(c)(5) and (d)(1) of the FCA. As explained in *LeBlanc,* a *qui tam* plaintiff seeking to recover remedial monetary damages from the government must show an entitlement to money that has been wrongfully denied by the government. In this case, Stinson avers that the government is wrongfully withholding between 10% and 25% of the settlement proceeds that the government received from Provident, which plaintiff claims it is entitled to under § 3730(d)(1). Stinson has failed to show, however, that it is properly entitled to a portion of the government's proceeds under the foregoing statutes.

The foregoing statutes relied on by Stinson do not confer a substantive right to recover monetary damages against the government because, as in *LeBlanc,* Stinson has not shown that it is a proper "person" entitled to file a *qui tam* suit as required by § 3730(d)(1) and, therefore, Stinson has not shown that it is entitled to recover money under the *qui tam* provisions of the FCA. Thus, as provided in § 3730(e)(4)(A),[8] this court does not have jurisdiction over Stinson's claim based on the facts at bar.

In order to effectively assert this court's jurisdiction to recover monetary damages from the government under § 3730(c)(4) and (d) as claimed and thus to effectively rebut defendant's motion to dismiss in this court, Stinson must show that it is the "original source" of the information underlying its *qui tam* suit against Provident as required by § 3730(e)(4)(A), *supra.* This, however, Stinson cannot do. Even if this court were to assume *arguendo* that no district court has

determined whether Stinson actually qualifies as the "original source" of the information which Stinson relied on in its *qui tam* suit against Provident, the Federal Circuit has held in *LeBlanc* that "[t]he Court of Federal Claims has no authority to make that determination because *qui tam* suits may only be heard in district courts. 31 U.S.C. § 3732(a)." *LeBlanc,* 50 F.3d at 1031. As a result, since this court has no jurisdiction to determine whether Stinson qualifies as an "original source" within the meaning of the FCA, a court of competent jurisdiction over the FCA, *i.e.,* a federal district court, must first make this determination prior to Stinson filing its complaint in this court.

█ Under the facts presented here, however, a federal district court, specifically the U.S. District Court for the Eastern District of Tennessee, *has* held that Stinson does not qualify as an "original source" within the meaning of the FCA[9] and, accordingly, the FCA does not mandate that the government pay Stinson any portion of the $27 million proceeds recovered by the government through its settlement with Provident. As a result, Stinson is collaterally estopped in this court from raising this claim a second time and is legally bound by that holding.

As stated by the United States Supreme Court, "[d]efensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 329, 99 S.Ct. 645, 650–51, 58 L.Ed.2d 552 (1979) (quoting *Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n.,* 19 Cal.2d 807, 122 P.2d 892, 895 (1942)). In other words, collateral estoppel, or "issue preclusion," bars a plaintiff from raising an issue which the plaintiff has previously litigated and lost against the same or a different defendant, *id.,* where all four (4) of the following elements are satisfied:

---

**8.** *See* footnote 3, *supra.*

**9.** The district court held that "[l]acking 'direct' and 'independent' knowledge, Stinson fails to qualify as an 'original source' of the information publicly disclosed in the *Leonard* litigation which gives rise to this lawsuit. Accordingly, this Court

does not have jurisdiction over the *qui tam* plaintiff's claims under the FCA." *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life and Acc. Ins. Co.,* No. 1–89–331, slip op. at 31 (E.D.Tenn. Dec. 10, 1991) (unpublished Order and Memorandum).

(1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action.

*Arkla, Inc. v. United States,* 37 F.3d 621, 624 (Fed.Cir.1994), *cert. denied sub nom. NorAm Energy Corp. v. United States,* —— U.S. ——, 115 S.Ct. 1399, 131 L.Ed.2d 287 (1995). Applying these four elements to the issue now before this court respecting—whether Stinson qualifies as an "original source" of the information relied on in its *qui tam* suit against Provident within the meaning of the FCA, this court finds, and Stinson does not dispute, that all four elements are satisfied.[10]

First, the U.S. District Court for the Eastern District of Tennessee has decided this identical issue in its order and memorandum dated December 10, 1991.[11] Second, the district court's order and memorandum clearly indicates that Stinson actually litigated the foregoing issue after which the court rendered a decision on the matter. Third, the district court held that Stinson does not qualify as an "original source" of the information relied on in its *qui tam* suit against Provident and, on this sole basis, held that it lacked jurisdiction over Stinson's *qui tam* suit pursuant to 31 U.S.C. § 3730(e)(4)(A), *supra.* Accordingly, the district court's conclusion that Stinson does not qualify as an "original source" was clearly necessary for, rather than incidental to, the court's judgment. Fourth and finally, the briefs of the parties submitted in this case show, and Stinson does not dispute, that during the period of approximately four years in which this issue had been raised prior to the district court's judgment, Stinson had a "full and fair opportunity" to litigate this issue.

Based on the foregoing, this court holds that it may not revisit the Eastern District Court of Tennessee's determination that Stinson fails to qualify as an "original source" of the publicly disclosed information used in Stinson's *qui tam* suit against Provident within the meaning of the FCA because Stinson is legally bound by the district court's decision and collaterally estopped from raising that issue in this court. *Parklane,* 439 U.S. at 332–33, 99 S.Ct. at 652–53.

Therefore, under the facts presented, we hold that the FCA does not support Tucker Act jurisdiction in this court, and, on this basis, this court further holds that it lacks subject matter jurisdiction to adjudicate Stinson's claim.

## III. CONCLUSION

For all of the foregoing reasons, defendant's motion to dismiss for lack of subject matter jurisdiction is hereby GRANTED, and the Clerk shall enter judgment accordingly. Thus, this court does not reach the merits of defendant's motion for summary judgment, plaintiff's cross-motion for summary judgment, and any other issues raised.[12] No costs.

IT IS SO ORDERED.

---

10. The issue of whether collateral estoppel serves to bar Stinson from raising this issue in this court based on its previous litigation of that issue in the Eastern District Court of Tennessee was raised by defendant in its motion for summary judgment filed on June 30, 1994, pp. 4–6. On August 3, 1994, Stinson filed a reply brief in response to defendant's motion for summary judgment. Thus, the parties have had the opportunity to fully brief this issue. Nonetheless, plaintiff has not challenged defendant's assertion that the elements of collateral estoppel are satisfied here.

11. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life and Acc. Ins. Co.,* No. 1–89–331 (E.D.Tenn. Dec. 10, 1991) (unpublished order and memorandum).

12. In view of the foregoing disposition of subject case, it is not necessary to address the additional contentions averred by defendant in justification of the motion to dismiss.