Francis AKINRO, Plaintiff,

v.

**UNITED STATES, Defendant.**

No. 10–10C.

United States Court of Federal Claims.

Feb. 17, 2010.

Francis Akinro, Los Angeles, CA, pro se.

William Grimaldi, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant. With him were Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, Washington D.C.

## OPINION

HORN, Judge.

The plaintiff, Francis Akinro, filed a complaint in this court on January 5, 2010, together with an application to proceed *in forma pauperis,* accompanied by a supporting declaration. Plaintiff requests to proceed *in forma pauperis* because he "have [sic] work very hard in the past weeks and because of different litigation he is pursing [sic] which require a lot of money to prosecute and the money peoples [sic] monitoring him take directly from his bank account which cannot be recovered." Both plaintiff's application to proceed *in forma pauperis* and the plaintiff's complaint are difficult to follow, and the complaint is repetitive. Moreover, the complaint fails to raise issues over which the United States Court of Federal Claims has jurisdiction. Plaintiff's complaint lists as defendants "U.S. Postal Office Los Angeles County and others." "Others" referenced in the complaint include "Mrs. Ehiloa 'Iya Idowu', Post-

master Cheryl,[1] Mr. Laide Badejo, Mr. Joseph Taye Badejo, Mrs. Abina 'Iya Ojewoye', Mrs. Brandley 'Iya Adugbo Relative', Mrs. Diana, Mrs. Winebrene 'Iya Osho or Iya Adugbo', Mr. Donald Winebrene 'Iya Osho brother of Head Of Indian Demon Library Power', Mrs. Abiye Ijalana, Mrs. Williams 'Iya Alake' Mrs. Latisha, Mrs. Latisha Father, Mrs. Latisha Mother," all of whom Mr. Akinro demands be sentenced to thirty years imprisonment each "for intercept [sic] with the delivery of my mails, stole and still stealing all the money and certificates anybody may send to me in the mail the money worth billions and trillions of dollars . . . ." In his complaint, Mr. Akinro also alleges injury by Mr. Catherine C. Blake, a United States District Judge, Ms. Kike Adeshina; the police of Hawthorne, California; the Inglewood Superior Court Sheriff's Department; and all Presidents of the United States, including and following Bill Clinton.

Because the plaintiff has filed the complaint pro se, and he is entitled to liberal construction of the pleadings by the court, the court construes plaintiff's claim to be against the United States for purposes of its review. All claims in the United States Court of Federal Claims must have "the United States designated as the party defendant . . . ." Rule 10(a), Rules of the United States Court of Federal Claims (RCFC).

Mr. Akinro's allegations also include that after he moved to California, numerous individuals including "Mrs. Cheryl the postmaster," entered into blood oaths to prevent the plaintiff from collecting his mail. Additionally, "Mrs. Ehiloa 'Iya Idowu'" "bargain[ed] with my neighbor [sic] Latisha family to be [sic] beating me up whenever I may go out to wait for postmaster to collect my mail" and "[t]he Police at Hawthorne [California] will even joined [sic] them to aid [sic] my beating up and drive back to my apartment." Mrs. Ehiloa also allegedly entered into blood oaths with three additional people "to be taking my mail immediately [sic] they drop it in the mail box to their hiding places [sic] at Lagos[,] Nigeria through their monitoring [sic]

spirit road [sic] the road which they can use to reach Lagos in a second and come back to the United States in a second." The result was allegedly "billions of trillion [sic] of dollars in the mail address [sic] to me" that the plaintiff was unable to collect. Mr. Akinro demands "Nine Hundred Thousand Trillions dollar [sic] ($900, 000, Trillions Dollars)," "Nine Hundred Trillions [sic] Dollars" and "Nine Hundred Trillion Dollars" at different points in his complaint as compensatory damages. He asks the court to award him either the nine hundred trillion dollars or the nine hundred quadrillion dollars "from the account President Barack Obama given [sic] to U.S. Post Office Central Post Office of Los Angeles County to be given to their staffs and customer [sic] at los Angeles."

Mr. Akinro alleges that the defendants: do not believe he and his family are human beings, hates him being in the United State [sic] and are "[d]eceiving the rest of America by claiming my family land at 'Oloogburu' in Iyere–Owo[,] Nigeria as their spirit world and were [sic] the president of [sic] United States is using [sic] as a place to be broadcasting to America as [sic] White House of United States starting from President Bill Clinton and the President after him."

Mr. Akinro also claims that the defendants have:

intercept [sic] with the delivery of my mails, stole and still stealing all the money and certificates anybody may send to me in the mail the money worth billions of trillions of dollars in violating of 15 U.S.C. Section 17 Sherman Antitrust Act of July 02, 1890 ch. 647, 26 stat 209 as provided for U.S. government to investigate and pursue trusts, companies and organization [sic] suspected of violating the act which was the first Federal statute to limit Carte [sic] and monopolies for interstates [sic] commerce.

Plaintiff further claims that the defendants have engaged in deceptive trade practices, breach of contract and misrepresentation and that he is the victim of "[h]arassment and torture by Mrs. Ehiola 'Iya Idowu' which

---

1. Several of the persons alleged to have harmed the plaintiff are named by plaintiff without surnames.

postmaster Cheryl started delivery [sic] my mail to from April 2009 till present in order for peoples [sic] from Ibo tribes from Nigeria to get rich and to prevent me from receiving any money or certificate in the mail so as to ruin my market."

## DISCUSSION

■ When determining whether a complaint filed by a *pro se* plaintiff is sufficient to invoke review by a court, pro se plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States,* 75 Fed.Cl. 249, 253 (2007).

■ "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g* and *reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008); *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1993)); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *Thompson v. United States,* 88 Fed.Cl. 263, 266 (2009); *North Star Alaska Hous. Corp. v. United States,* 76 Fed.Cl. 158, 185, *appeal dismissed,* 226 Fed. Appx. 1004 (2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir. 2001) (citing *Johannsen v. Pay Less Drug Stores N.W. Inc.,* 918 F.2d 160, 161 (Fed.Cir. 1990)); *see also Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1343 (Fed.Cir.2007); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

■ Pursuant to Rule 8(a) of the United States Court of Federal Claims (RCFC) and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2); Fed.R.Civ.P. 8(a)(1), (2). *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 555–57, 570, 127 S.Ct. 1955). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Edelmann v. United States,* 76 Fed.Cl. 376, 379 (2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)); *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), *aff'd,*

460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As stated in *Ashcroft v. Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly,*] 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

■ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (Fed.Cir.1997)), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2290, 152 L.Ed.2d 1049 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir.2000).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2006). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 875 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2007), *cert. denied*, 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996).

■ "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). To prove that a statute or regulation is money mandating, plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. at 217, 103 S.Ct. 2961 (quoting *United States v. Testan*, 424 U.S. at 400, 96 S.Ct. 948 and *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)); *see also Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed. Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir.1995), *cert. denied*, 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). "Additionally, the specific authority granting money relief must be distinct from the Tucker Act itself." *Cottrell v. United States*, 42 Fed.Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being

fatal to the court's jurisdiction under the Tucker Act." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir.2005); *see also Doe v. United States,* 74 Fed.Cl. 794, 796 (2006).

■ The plaintiff's complaint contains numerous allegations, none of which are within this court's jurisdiction. *See* 28 U.S.C. § 1491(a)(1). Plaintiff Akinro incorrectly states, "[s]ince this case is against United States [sic] U.S. Court of Federal Claim [sic] is Specifically have [sic] jurisdiction over this case." However, none of the bases of jurisdiction cited by Mr. Akinro are applicable and none of the statutes cited in the complaint are money-mandating statutes. Mr. Akinro claims his rights under the Fifth and Fourteenth Amendments to the United States Constitution, and that "15 U.S.C. Section 1601 et seq" were violated. Mr. Akinro claims 15 U.S.C. § 1601 (2006) relates to "deceptive trade practices, breach of contract, and misrepresentation by U.S. Post Office who have [sic] double-crossed me to enter into blood oath with Mrs. Ehiloa and others to intercept with [sic] the delivery of money and certificate to me in the mail." That statute, 15 U.S.C. § 1601, however relates to congressional findings regarding consumer credit disclosures.[2] Even with a liberal construction of the plaintiff's pleadings, this court can find no basis for jurisdiction in this court based on the statute. Moreover, none of the plaintiff's allegations gave rise to an express or implied contract between the plaintiff and the United States.

Mr. Akinro also claims violations of "15 U.S.C. Section 17 Sherman Antitrust Act of July 02, 1890 ch. 647, 26 stat 209" provide a basis for this court's jurisdiction. Neither the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* (2006), nor specifically 15 U.S.C. § 17 (2006), which states that the antitrust laws are not applicable to labor organizations, are money-mandating statutes.[3] Further, this court does not have jurisdiction to hear claims under the Sherman Act, as the United States federal district courts have exclusive jurisdiction for claims under the Sherman Act. *See Hufford v. United States,* 87 Fed.Cl. 696, 703 (2009) (Cases under the Sherman Act are "explicitly committed to the district courts. Section 4 of title 15 of the United States Code reads, 'The several *district courts* of the United States are invested with jurisdiction to prevent and restrain violations of sections 1 to 7 of this title.' 15 U.S.C. § 4 (2006).") (emphasis in original); *see also Cherbanaeff v. United States,* 77 Fed.Cl. 490, 502 (2007) ("Where Congress has granted exclusive jurisdiction in certain courts, these statutory provisions govern."), *aff'd,* 300 Fed. Appx. 933 (Fed.Cir.2008). As a footnote,

---

**2.** 15 U.S.C. § 1601 states:

(a) Informed use of credit
The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.
(b) Terms of personal property leases
The Congress also finds that there has been a recent trend toward leasing automobiles and other durable goods for consumer use as an alternative to installment credit sales and that these leases have been offered without adequate cost disclosures. It is the purpose of this subchapter to assure a meaningful disclosure of the terms of leases of personal property for

personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements.
15 U.S.C. § 1601.

**3.** 15 U.S.C. § 17 states:

The labor of a human being is not a commodity or article of commerce. Nothing contained in the antitrust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the antitrust laws.
15 U.S.C. § 17.

beyond the jurisdictional hurdles which plaintiff has not overcome, there are no facts which plaintiff has alleged that demonstrate a violation of the Sherman Act.

As noted above, the complaint is not easy to understand, although some of the allegations appear to raise allegations of either criminal or tortious conduct by the staff of the United States Postal Service. For example, the claims of deceptive trade practices and misrepresentation "by U.S. Post Office who have [sic] double-crossed me to enter into blood oath with Mrs. Ehiloa and others to intercept with [sic] the delivery of money and certificate to me in the mail," appear to allege either criminal or tort claims. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1); *see also Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d at 1343; *Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir.1998); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.), *reh'g denied* (Fed.Cir.1997); *Golden Pacific Bancorp v. United States,* 15 F.3d 1066, 1070 n. 8 (Fed. Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir.), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Woodson v. United States,* 89 Fed.Cl. 640, 650 (2009); *McBrien v. United States,* 87 Fed.Cl. 341, 342, *recons. denied,* No. 08–840, 2009 WL 2045678 (Fed.Cl. Jul.10, 2009), *aff'd,* 352 Fed.Appx. 440 (Fed.Cir.2009); *McCullough v. United States,* 76 Fed.Cl. 1, 3 (2006), *appeal dismissed,* 236 Fed.Appx. 615 (Fed. Cir.), *reh'g denied* (Fed.Cir.), *cert. denied,* 552 U.S. 1050, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007); *Agee v. United States,* 72 Fed.Cl. 284, 290 (2006); *Zhengxing v. United States,* 71 Fed.Cl. 732, 739, *aff'd,* 204 Fed.Appx. 885 (Fed.Cir.), *reh'g denied* (Fed.Cir.2006).

■ Similarly, to the extent that plaintiff is alleging criminal behavior on the part of a federal employee, no jurisdiction resides in this court. This court lacks jurisdiction to adjudicate criminal claims. *See Joshua v. United States,* 17 F.3d 378, 379 (Fed.Cir. 1994); *Mendes v. United States,* 88 Fed.Cl.

759, 762 (2009) (finding that the court lacked jurisdiction to consider plaintiff's criminal claims); *McCullough v. United States,* 76 Fed.Cl. at 4 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims). Therefore, plaintiff's claim that federal individuals, including "Postmaster Cheryl" be sentenced to thirty years imprisonment for interception of plaintiff's mail and allegedly stealing the money that was sent to him may not be heard in this court.

Plaintiff's allegations also include that he was deprived of his rights under the Fifth and Fourteenth Amendments to the Constitution "by defendants who refuse to attack me legally in order for them to hinder my market." In *Crocker v. United States,* the United States Court of Appeals for the Federal Circuit wrote: "The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear [plaintiff's] due process ... claims under the Fifth Amendment to the United States Constitution." *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed. Cir.1997); *see also In re United States,* 463 F.3d 1328, 1335 n. 5 (Fed.Cir.) ("[B]ecause the Due Process Clause is not money-mandating, it may not provide the basis for the jurisdiction under the Tucker Act."), *reh'g and reh'g en banc denied* (Fed.Cir.2006), *cert. denied sub nom. Scholl v. United States,* 552 U.S. 940, 128 S.Ct. 50, 169 L.Ed.2d 243 (2007); *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir.1995) (finding that claims under the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of Separation of Powers do not invoke United States Court of Federal Claims' jurisdiction because "they do not mandate payment of money by the government."); *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), *reh'g denied* (Fed.Cir.1995); *Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir. 1988) (finding that the due process clauses "do not trigger Tucker Act jurisdiction in the courts."); *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that the Fifth Amendment's Due Process Clause does not include language mandating the payment

of money damages); *McCullough v. United States*, 76 Fed.Cl. at 4 ("[N]either the Fifth Amendment Due Process Clause ... nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff."). Therefore, to the extent that plaintiff raises allegations of a due process claim, no cause of action can be brought in this court. Moreover, plaintiff makes no substantive factual allegations in support of any such due process claims. In addition, there is not even a minimal suggestion in the complaint that a taking in violation of the Fifth Amendment to the United States Constitution occurred.

■ As noted above, plaintiff's complaint was accompanied by an application to proceed *in forma pauperis*. In order to provide access to this court to those who cannot pay the filing fees mandated by Rule 77.1(c) of the Rules of the United States Court of Federal Claims (RCFC), 28 U.S.C. § 1915 (2006) permits a court of the United States to allow a plaintiff to file a complaint without payment of fees or security, under specific circumstances. Section 1915(a)(1) states that:

> Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [4] possesses that the person is unable to pay such fees

or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1).

■ In enacting the *in forma pauperis* statute, 28 U.S.C. § 1915, Congress recognized that " 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.' " *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)); *see also McCullough v. United States*, 76 Fed.Cl. at 3. Accordingly, Congress included subsection (e) of the *in forma pauperis* statute, which allows courts to dismiss lawsuits it determines to be "frivolous or malicious." 28 U.S.C. § 1915(e). The United States Supreme Court has found that "a court may dismiss a claim as factually frivolous if the facts alleged are 'clearly baseless'... a category encompassing allegations that are 'fanciful'...'fantastic'... and 'delusional....' " *Denton v. Hernandez*, 504 U.S. 25, 32–33, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (internal citations omitted); *see also McCullough v. United States*, 76 Fed.Cl. at 3; *Schagene v. United States*, 37 Fed.Cl. at 663. Courts, however, should exercise caution in dismissing a case under section 1915(e) because a claim that the court perceives as likely to be unsuccessful is not necessarily frivolous. *See Denton v. Her-*

---

4. A number of courts have reviewed the words of 28 U.S.C. § 1915(a)(1), regarding *in forma pauperis* applications by non-prisoner litigants in federal courts, and have concluded that Congress did not intend for non-prisoners to be barred from being able to proceed *in forma pauperis* in federal court. *See Floyd v. United States Postal Serv.*, 105 F.3d 274, 275–76 (6th Cir.), *reh'g denied* (6th Cir.1997); *Schagene v. United States*, 37 Fed.Cl. 661, 663 (1997) (finding that it was not the intent of Congress to eliminate the in forma pauperis right of access to federal courts of eligible, indigent, non-prisoners), *appeal dismissed*, 152 F.3d 947, 1998 WL 187786 (Fed.Cir.1998); *see also In re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir.1997) (discussing how to administer in forma pauperis rights to a non-prisoner, thereby acknowledging the rights of non-prisoners to apply for *in forma pauperis* sta-

tus); *Leonard v. Lacy*, 88 F.3d 181, 183 (2d Cir.1996) (using "sic" following the word "prisoner" in 28 U.S.C. § 1915(a)(1) to indicate that the use of that word was inappropriate); *Powell v. Hoover*, 956 F.Supp. 564, 566 (M.D.Pa.1997) (holding that a "fair reading of the entire section [28 U.S.C. § 1915(a)(1)] is that it is not limited to prisoner suits."). Moreover, 28 U.S.C. § 1915(a)(1) refers to both "person" and "prisoner." The word "person" is used three times in the subsection, while the word "prisoner" is used only once. This court, therefore, finds that the single use of the word "prisoner" in the language of 28 U.S.C. § 1915(a)(1) was not intended to eliminate a non-prisoner from proceeding in federal court *in forma pauperis*, provided that the civil litigant can demonstrate appropriate need. Any other interpretation is inconsistent with the statutory scheme of 28 U.S.C. § 1915.

*nandez,* 504 U.S. at 33, 112 S.Ct. 1728. As stated by the United States Supreme Court, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* Mr. Akinro's claims that he would have received "billions of trillions of dollars," but for the defendants stealing his mail as well as his demand for "Nine Hundred Thousand Trillions dollar [sic] ($900, 000, Trillions Dollars)," "Nine Hundred Trillions [sic] Dollars" or "Nine Hundred Trillion Dollars," "from the account President Barack Obama given [sic] to U.S. Post Office Central Post Office of Los Angeles County to be given to their staffs and customer [sic] at los Angeles," rise to the level of the irrational or the wholly incredible.

■ Mr. Akinro's application to proceed *in forma pauperis* also fails to meet the requirements of 28 U.S.C. § 1915(a)(1). That statute requires a person to submit an affidavit with a statement of all the applicant's assets, and that the affidavit state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. *See* 28 U.S.C. § 1915(a)(1). Instead, in his Request to Proceed Informa [sic] Pauperis With Declaration In Support, Mr. Akinro merely states, "[p]laintiff who is appearing pro se in this case have [sic] work [sic] very hard in the past weeks and because of different litigation he is pursing [sic] which [sic] require a lot of money to prosecute...." While the plaintiff lists a number of cases he is allegedly pursuing in addition to this case, including: *"Francis Akinro v. Saiontz & Kirk P.A.2009, Francis Akinro v. U.S. Department of veterans [sic] Affairs 2009, Francis Akinro v. Bank Of America 2009, Francis Akinro v. Bank Of Western Ave 2009, Francis Akinro v. Los Angeles Sheriff Department and Bay pointe Apartment Complex 2009,"* the plaintiff never provides a statement of his assets. Nor does he state the nature of the action. While the plaintiff alleges that he is entitled to redress by stating, "I believe I am entitle [sic] to such relief as *Circuit city stores v. Mantor* 335 F.3d 1101 case number 02–55230 [*Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101 (9th Cir.2003) ]," this alone is not sufficient for the court to grant the application to proceed *in forma pauperis.*

The court also notes that the plaintiff has been a frequent filer in federal court. Mr. Akinro has twice filed complaints in this court and both times the complaints have been dismissed for lack of jurisdiction. *See Akinro v. United States,* Docket 1:01–cv–00447–LJB, no. 16, filed 10/23/2002; *see also Akinro v. United States,* Docket 1:02–cv–00510–JFM, no. 4, filed 5/23/2002. The plaintiff has filed numerous actions in federal district court, all of which have been denied or dismissed. *See Akinro v. Maher,* 2002 WL 32351373 (D.Md. Mar.4, 2002) (dismissing complaint as frivolous), *aff'd,* 37 Fed.Appx. 644 (4th Cir.2002);[5] *see also Akinro v. Blake,* 2007 WL 3020186 (D.Md. Jun.8, 2007) (dismissing complaint sua sponte), *aff'd,* 235 Fed.Appx. 75 (4th Cir. 2007), *cert. denied,* 552 U.S. 1147, 128 S.Ct. 1077, 169 L.Ed.2d 818, *reh'g denied,* 552 U.S. 1252, 128 S.Ct. 1496, 170 L.Ed.2d 313 (2008); *Akinro v. Abina,* 2006 WL 4538661 (D.Md. Jul.11, 2006) (denying motion for recusal and reconsideration of previous order dismissing complaint as frivolous), *aff'd sub nom. Akinro v. Gbenga,* 206 Fed.Appx. 259 (4th Cir.2006); *Akinro v. Dep't of Homeland Sec.,* 2006 WL 4071876 (D.Md. Jun.15, 2006) (denying mandamus relief based on the record and pleadings), *aff'd,* 203 Fed.Appx. 529 (4th Cir.2006), *cert. denied,* 549 U.S. 1306, 127 S.Ct. 1905, 167 L.Ed.2d 367, *reh'g denied,* 551 U.S. 1177, 128 S.Ct. 8, 168 L.Ed.2d 785 (2007); *Akinro v. Gbenga,* No. CA–01–4188–CCB (D.Md. Apr. 1, 2002) (dismissing

---

**5.** Six years after the decision in *Akinro v. Maher,* the plaintiff filed a motion to reopen the case because of 'newly discovered evidence' that purported to established "violations of the Ninth and Fourteenth Amendments, Title VII of the Civil Rights Act of 1964, and Resolution 39/46 of the Untied [sic] Nations General Assembly and the Foreign Affair Reform and Restructuring Act of 1998" which the United States District Court of Maryland denied. *Akinro v. Maher,* 2008 WL 5636317, at *1 (D.Md. Apr.25, 2008), *aff'd,* 286 Fed.Appx. 45 (4th Cir.), *cert. denied,* — U.S. —, 129 S.Ct. 768, 172 L.Ed.2d 759 (2008), *reh'g denied,* — U.S. —, 129 S.Ct. 1543, 173 L.Ed.2d 669 (2009).

complaint as frivolous), *aff'd*, 40 Fed.Appx. 866 (4th Cir.2002); *Akinro v. Dep't of Health & Human Servs.*, No. CA–02–556–CCB (D.Md. Mar. 29, 2002) (dismissing complaint) *aff'd*, 38 Fed.Appx. 919 (4th Cir.2002); *Akinro v. Maryland*, No. CA–01–1607–CCB (D.Md.) (denying reconsideration of sua sponte dismissal of complaint pursuant to 28 U.S.C. § 1915(e)), *modified* 39 Fed.Appx. 877 (4th Cir.2002) (modifying to reflect dismissal under Fed.R.Civ.P. 12(h)(3)); *Akinro v. Morgan State Univ.*, No. CA–01–862–CCB (D.Md. Jun. 11, 2001) (dismissing complaint), *aff'd*, 22 Fed.Appx. 208 (4th Cir. 2001).

### CONCLUSION

Upon review of plaintiff's complaint, the plaintiff has alleged no claims within the jurisdiction of this court. Therefore, the court **DISMISSES** plaintiff's complaint, with prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion. Costs to the defendant.

**IT IS SO ORDERED.**